| Image ID:<br>D00339794D01 | SUMMONS | Doc. No.   339794 |

IN THE DISTRICT COURT OF Douglas COUNTY, NEBRASKA
1701 Farnam
Omaha              NE 68183

Meyer Natural Foods LLC v. Liberty Mutual Fire Ins Co

Case ID: CI 15     3754

TO:  Liberty Mutual Fire Ins Co

You have been sued by the following plaintiff(s):

Meyer Natural Foods LLC            Crum & Forster Specialty Ins Co

Plaintiff's Attorney:    Thomas A Grennan
Address:                 1500 Omaha Tower
                         2120 S 72nd St.
                         Omaha, NE 68124
Telephone:               (402) 392-1500

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date:  AUGUST 27, 2015      BY THE COURT:    _John M. Friend_
                                             Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

        Liberty Mutual Fire Ins Co
        c/o CSC-Lawyers Inc Service Co
        233 South 13th Street, Ste 1900
        Lincoln, NE 68508

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue,
and file with the court clerk proof of service within ten days after the signed
receipt is received or is available electronically, whichever occurs first.

Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI150003754
Transaction ID: 0002309940
Filing Date: 04/24/2015 03:40:01 PM CDT

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | |
|---|---|
| MEYER NATURAL FOODS, LLC, and ) <br> CRUM & FORSTER SPECIALTY ) <br> INSURANCE COMPANY, ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> LIBERTY MUTUAL FIRE INSURANCE ) <br> COMPANY, ) <br> ) <br>     Defendant. ) | Case No.: CI 15-_____ <br><br><br><br><br> **COMPLAINT** |

COME NOW the Plaintiffs, Meyer Natural Foods, LLC ("Plaintiff Meyer") and Crum & Forster Specialty Insurance Company ("Plaintiff C&F"), and for their Complaint against Defendant, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), state and allege as follows:

### ENTITIES

1.     At all times material hereto, Plaintiff Meyer has been and is a limited liability company organized under the laws of the State of Delaware, with its principal office located in Loveland, Colorado.

2.     At all times material hereto, Plaintiff C&F was and is an insurer who issued a policy of insurance to Plaintiff Meyer. Plaintiff C&F is joined in this lawsuit for the sole purpose of protecting its subrogation claim in the amount of $894,998.00.

3.     At all times material hereto, Greater Omaha Packing Co., Inc. ("GOPAC") has been and continues to be a corporation formed and existing under the laws of the State of Nebraska, with its principal place of business at 3001 L Street, Omaha, Nebraska 68107.

4.     At all times material hereto, Liberty Mutual issued a policy of insurance to Greater Omaha Packing Co., Inc., Policy No. YU2-L9L-426467-021 ("the Liberty Mutual Policy").   The Liberty Mutual Policy had a policy period from 04/03/2011 to 04/03/2012. A true and accurate copy of the Liberty Mutual Policy is attached hereto, marked Exhibit "A", and incorporated herein by reference; furthermore, the Liberty Mutual Policy has been bate stamped "GOP.000211 through GOP.000293" inclusive.

### PRELIMINARY ALLEGATIONS

5.     On or about April 27, 2006, Plaintiff Meyer and GOPAC entered into a "Processing Agreement" (the "Agreement"), a true and accurate copy of which is attached hereto, marked Exhibit "B", and incorporated herein by reference.

6.     Pursuant to the Agreement, GOPAC was to provide certain beef products to Plaintiff Meyer; such beef products were to be in full compliance with the various representations, specifications, and warranties set forth in the Agreement.

7.     On or about April 27, 2011, GOPAC supplied Plaintiff Meyer with beef that was contaminated with E. coli during the packing process at GOPAC's plant in Omaha, Douglas County, Nebraska; such E. coli contaminated beef included E. coli 0157:H7 and 6 Non-0157:H7 STEC E. coli strains. As a result of GOPAC supplying Plaintiff Meyer with beef contaminated with E. coli, Plaintiff Meyer was required to dispose of the contaminated beef.   Plaintiff Meyer incurred a financial loss and sustained monetary damages in the total sum of $1,395,227, such figure representing inventory losses, lost profit, overtime / storage charges, freight and incremental hauling charges, and other damages sustained by Plaintiff Meyer.   .

2

8.      The Agreement contained the following provision(s) pertaining to specifications and inspections:

SECTION 12.  SPECIFICATIONS AND INSPECTIONS.

(a)     GOP's services rendered hereunder shall conform to all of the following specifications and standards:

(i)     All Meyer products shall be processed according to quality and production standards consistent with Meyer's current practices. GOP shall maintain a quality control system reasonably satisfactory to Meyer covering all products processed hereunder, and shall maintain and provide to Meyer, at Meyer's request, accurate and complete records for such quality control system. Such system shall comply with all applicable requirements of the USDA. Without limiting the generality of the foregoing, GOP will follow all Meyer's protocols with respect to product safety, recalls, e-coli testing, temperature controls and other matters, and will meet or exceed Meyer's current capabilities for tracking products for potential recall.

(ii)    GOP agrees to maintain and operate the Covered Facilities in a commercially reasonable manner according to industry best practices, and to keep such facilities in good repair and in compliance with all applicable standards of operation and good manufacturing practices of the USDA.

*****

3

At Section 12(a)(i) of the Agreement, GOPAC was contractually required to "... maintain a quality control system ... and that such system shall comply with all applicable requirements of the USDA ...". The United States Department of Agriculture ("USDA") requires that ground beef and non-intact beef products be free of E. coli 0157:H7 and 6 Non-0157:H7 STEC E. coli strains. GOPAC failed to meet this requirement and thereby breached the contract provisions quoted above in this paragraph 8.

9.    The Agreement contained the following provision(s) pertaining to certain covenants:

> SECTION 13. <u>CERTAIN COVENANTS</u>.
>
> (a)    GOP covenants and agrees that during the Term, it shall (i) obtain and maintain all permits and licenses necessary for the valid performance of the Processing Services provided to Meyer hereunder, and the Covered Facilities and its processing operations shall be operated in compliance with all applicable codes, laws, statutes, regulations and ordinances under federal, state or local governments, including without limitation, all requirements of the USDA and the United States Food and Drug Administration, and all environmental, health or safety laws.

*****

The United States Department of Agriculture ("USDA") requires that ground beef and non-intact beef products be free of E. coli 0157:H7 and 6 Non-0157:H7 STEC E. coli strains. GOPAC failed to meet this requirement and thereby breached the covenants quoted above in this paragraph 9.

10.    The Agreement contained the following provision(s) pertaining to warranties:

4

SECTION 15. <u>WARRANTIES</u>.

    (a)    GOP represents and warrants to Meyer as follows:

*****

    (iii)    Each and every processed product produced hereunder for Meyer and related packaging: (A) will not be adulterated or misbranded within the meaning of any applicable federal, state or local law, or any rules and regulations promulgated thereunder; (B) will conform to the quality, production standards and other specifications of Meyer; (C) will comply with all applicable federal, state and local laws, and the rules and regulations promulgated thereunder; (D) will be free and clear of all liens, security interest, claims and encumbrances; (E) will be fit for their intended use and free of any defects created or caused by the negligence or willful misconduct of GOP; and (F) will be properly stored, handled and transported; and

*****

GOPAC breached the warranty provisions of Section 15 (quoted above) by supplying Plaintiff Meyer with meat contaminated with E. coli.

    11.    The Agreement contained the following provision(s) pertaining to indemnity:

SECTION 16. <u>INDEMNITY</u>.

    (a)    GOP agrees to indemnify, defend and hold harmless Meyer and its customers, shareholders, members, officers, directors, employees, agents and affiliates from any claim, demand, loss, damage, liability, cost or expense, directly or indirectly arising out of, or

5

> in connection with, or resulting from GOP's breach of any of its representations, warranties and obligations under this Agreement, or the willful or negligent acts or omissions of GOP, or any of its employees, agents, contractors, subcontractors or vendors in rendering the Processing Services hereunder.

*****

Since the contamination of Plaintiff Meyer's beef products was the result of GOPAC's processing, GOPAC is obligated to indemnify Plaintiff Meyer " ... from any ... loss, damage, liability, cost or expense, directly or indirectly arising out of, or in connection with, or resulting from GOP's breach of any of its representations, warranties and obligations ...".

12.     The Agreement contained the following provision(s) pertaining to insurance:

SECTION 18. INSURANCE.

(a)     GOP shall at all times during the Term maintain property insurance on the value of all Meyer property in its possession from time to time and a comprehensive general liability insurance policy, including liability coverage, contractual liability coverage and product liability coverage insuring against any and all liabilities under this Agreement, in minimum amounts of $30,000,000 per occurrence and in the aggregate for damage, injury and/or death to individual person and $3,000,000 per occurrence and in aggregate for damage for property and/or injury to property, with the coverages, amounts and deductible levels of such policies to be consistent with industry standards and acceptable to Meyer. Such policies shall name Meyer as additional insured and loss payee, and GOP shall provide Meyer with certificates of insurance evidencing these insurance coverages and providing for 30 days'

6

> advance written notice to Meyer of any material
> change or termination of such coverages.

Pursuant to this Section of the Agreement, GOPAC was required to " ... maintain property insurance on the value of all Meyer property in its possession ...". By operation of Section 18 (quoted above), GOPAC was required to obtain and maintain property insurance on the value of Meyer property, which would have included the E. coli contaminated beef supplied by GOPAC to Plaintiff Meyer, since such beef was still in the possession of GOPAC when the beef became contaminated with E. coli.

13.     The Liberty Mutual Policy contained the following provisions, among others:

## DECLARATIONS

**A.**     Insuring Agreement

> Subject to all the terms and conditions of this policy, **we** will pay for risks of direct physical loss or damage to **covered property** as a result of an **occurrence**, unless excluded.

*****

**B.**     Coverages

> **We** provide the following coverages if they are marked with an "X". Coverages are provided in accordance with the terms of this policy. Terms that apply only to individual coverage forms are set forth in those forms. This policy provides coverage on a replacement cost basis for **real property, personal property, personal property of others** and equipment breakdown except as indicated on VALUATIONS, Form RM1005, or any other forms or endorsements attached to this policy.
>
> (X)     **Real Property**

7

(X)   **Personal   Property,**   including   **personal property of others**

Liberty Mutual Policy, Form RM1000, Page 2 of 6.

## COVERAGES

*****

B.   If coverage for **personal property** is provided as shown in **B.** Coverages of the DECLARATIONS, Form RM1000, **we** will pay for a **covered loss** to your **personal property**, including **personal property of others** and **valuable papers and records,** at or within one-thousand (1,000) feet of a **covered location**.

Liberty Mutual Policy, Form RM1000, Page 1 of 4.

## VALUATIONS

*****

**(4)**   The amount of **your** legal liability to the owner of **personal property of others**; or

Liberty Mutual Policy, Form RM1005, Page 1 of 2.

## DEFINITIONS

*****

E.E.   **Personal property of others** means tangible things **you** do not own, other than **real property**, that are:

**1.**   Sold by **you** that **you** agreed, prior to loss, to insure for the account of the purchaser during delivery;

**2.**   In **your** custody which **you** agreed, prior to loss, to insure; or

**3.**   In **your** care, custody or control, and for which **you** are legally liable, but only to the extent of **your** insurable interest therein.

Liberty Mutual Policy, Form RM1007, Page 6 of 9; Page 7 of 9.

8

Meyer's beef product (described above and which was contaminated with E. coli) constituted "personal property of others" that was sold by GOPAC and for which GOPAC agreed to insure pursuant to the Agreement; therefore, Liberty Mutual owes insurance coverage to Meyer. In addition, Meyer's beef product (described above and which was contaminated with E. coli) was in the custody of GOPAC and GOPAC agreed, prior to the loss, to insure it; therefore, Liberty Mutual owes insurance coverage to Meyer. Furthermore, Meyer's beef product (described above and which was contaminated with E. coli) was in GOPAC's care, custody and control and GOPAC was legally liable to Meyer; therefore, Liberty Mutual owes insurance coverage to Meyer.

WHEREFORE, Plaintiffs pray as follows:

a.    for a declaration that coverage is owing from Liberty Mutual to Plaintiff Meyer for the reasons set forth above; and

b.    for judgment against Defendant Liberty in the amount of $1,395,227.

DATED this _24_ day of April, 2015.

> MEYER NATURAL FOODS, LLC, and
> CRUM & FORSTER SPECIALTY
> INSURANCE COMPANY, Plaintiffs
>
> By:_____
> Thomas A. Grennan #15675
> GROSS & WELCH, P.C., L.L.O.
> 1500 Omaha Tower
> 2120 South 72nd Street
> Omaha, NE 68124
> (402) 392-1500
> *Attorneys for Plaintiffs*

11441-4/68H2682

9



### Liberty Mutual Fire Insurance Company

### (A Stock Company herein called the Company)

While this policy is in effect, **you** are a member of Liberty Mutual Holding Company Inc. and are entitled to vote either in person or by proxy at any and all meetings of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is in Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning.

**You** shall participate in the distribution of surplus funds of the company through any dividends that may be declared for this Policy. The amount of any dividends that may be declared shall be to the extent, and upon the conditions fixed and determined by the Board of Directors and in compliance with any laws that apply.

This policy is classified for dividend purposes in DIVIDEND CLASS I - Fire and Allied Lines.

This policy is not assessable.

In witness whereof, the company has caused this policy to be signed by its President and its Secretary in Boston, Massachusetts and countersigned on the DECLARATIONS, Form RM1000, by a duly authorized representative of the company.

SECRETARY

PRESIDENT

RM0001 02-11



EXHIBIT

Page 1 of 2

**CONFIDENTIAL**

GOP.000211



### Liberty Mutual Fire Insurance Company

Notice of Membership in Liberty Mutual Holding Company Inc. and
Notice of Annual Meeting

Your policy includes a statement regarding membership rights in Liberty Mutual Holding Company Inc.
Liberty Mutual Fire Insurance Company is a stock insurance company subsidiary of Liberty Mutual
Holding Company Inc. Insurance is provided by Liberty Mutual Fire Insurance Company. You are a
member of Liberty Mutual Holding Company Inc.

As a member of Liberty Mutual Holding Company Inc., you are entitled to vote either in person or by proxy
at the annual meeting of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is in
Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning.

Members of Liberty Mutual Holding Company Inc. may request a copy of the company's annual financial
statements, which are posted on Liberty Mutual's website at www.libertymutual.com, by writing to Liberty
Mutual Holding Company Inc., 175 Berkeley Street, Boston, Massachusetts, 02117.

RM0001 02-11

Page 2 of 2

**CONFIDENTIAL**

GOP.000212



## RM SELECT™ POLICY

## POLICY REFERENCE INDEX

This INDEX is to help you read your Policy. It is not a part of the Policy and is in no way a substitute for reading your entire Policy.

Your Policy may or may not include all of the forms, endorsements, coverages and provisions listed in this INDEX. Refer to the POLICY INDEX, Form RM0003, for a list of forms and endorsements that are included on your policy.

PLEASE READ YOUR POLICY CAREFULLY!

|  | Form Number | Beginning on Page |
|---|---|---|
| **SIGNATURE PAGE** | RM0001 | |
| **POLICY INDEX** | RM0003 | |
| **STATE OR MUNICIPAL TAXES, SURCHARGE AND OTHER MISCELLANEOUS CHARGES SUMMARY** | RM0005 | |
| **DECLARATIONS** | RM1000 | |
| Named Insured and Mailing Address | | 1 |
| Policy Period | | 1 |
| Policy Premium | | 1 |
| A. Insuring Agreement | | 2 |
| B. Coverages | | 2 |
| C. Limits of Liability | | 2 |
| D. Standard Extensions of Coverage | | 2 |
| E. Optional Extensions of Coverage – Sublimits of Liability | | 2 |
| F. Equipment Breakdown Coverage | | 3 |
| G. Deductible and waiting periods | | 4 |
| Schedule | | 5 |
| **COVERAGES** | RM1001 | |
| A. Real Property | | 1 |
| B. Personal Property | | 1 |

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

RM0002 02-11

CONFIDENTIAL

GOP.000213

**POLICY REFERENCE INDEX – (CONTINUED)**

|  | Form Number | Beginning on Page |
|---|---|---|
| **COVERAGES – (CONTINUED)** | RM1001 | |
| C.  Loss of Business Income | | 1 |
| D.  Extra Expense | | 3 |
| E.  Equipment Breakdown | | 4 |
| **EXTENSIONS OF COVERAGE** | RM1002 | |
| A.  Standard Extensions of Coverage | | 1 |
| 1.  Accounts Receivable | | 1 |
| 2.  Arson Reward | | 2 |
| 3.  Computer Virus and Denial of Access | | 2 |
| 4.  Debris Removal Expense | | 3 |
| 5.  Deferred Payments | | 3 |
| 6.  Duty to Defend | | 3 |
| 7.  Extended Period of Restoration | | 4 |
| 8.  Fire Department Charges | | 4 |
| 9.  Fine Arts | | 4 |
| 10.  Fungus Cleanup Expense | | 4 |
| 11.  Installation of Personal Property or Personal Property of Others | | 5 |
| 12.  Lock and Key Replacement | | 5 |
| 13.  Personal Property of Employees | | 5 |
| 14.  Plants, Trees or Shrubs | | 5 |
| 15.  Pollution Cleanup Expense | | 5 |
| 16.  Professional Fees | | 6 |
| 17.  Removal | | 6 |
| B.  Optional Extensions of Coverage | | 6 |
| 1.  Course of Construction | | 6 |
| 2.  Errors and Omissions | | 7 |
| 3.  Exhibitions, Expositions, Fairs or Trade Shows | | 7 |
| 4.  Miscellaneous Locations | | 7 |
| 5.  New Locations | | 7 |
| 6.  Demolition Cost, Increased Construction Cost and Operation of Building Laws | | 8 |
| 7.  Salespeople | | 8 |
| 8.  Transit | | 9 |
| 9.  Unscheduled Locations | | 9 |
| **EXCLUSIONS** | RM1003 | |
| A.  GROUP A EXCLUSIONS | | 1 |
| B.  GROUP B EXCLUSIONS | | 3 |
| **PROPERTY NOT COVERED** | RM1004 | |
| **VALUATIONS** | RM1005 | |
| A.  Replacement Cost | | 1 |

CONFIDENTIAL

GOP.000214

POLICY REFERENCE INDEX – (CONTINUED)

|  | Form Number | Beginning on Page |
|---|---|---|
| **VALUATIONS – (CONTINUED)** | RM1005 | |
| B.   Actual Cash Value | | 1 |
| C.   Other Valuations | | 2 |
| **CONDITIONS** | RM1006 | |
| A.   Abandonment of Property | | 1 |
| B.   Appraisal | | 1 |
| C.   Assignment | | 1 |
| D.   Brands and Labels | | 1 |
| E.   Breach of Condition | | 1 |
| F.   Cancellation | | 1 |
| G.   Change of Terms | | 2 |
| H.   Collection from Others | | 3 |
| I.   Concealment, Misrepresentation or Fraud | | 3 |
| J.   Inspection | | 3 |
| K.   Liberalization | | 3 |
| L.   Loss Payee | | 3 |
| M.   Mortgage Holders | | 4 |
| N.   No Benefit to Bailee | | 4 |
| O.   No Reduction by Loss | | 4 |
| P.   Nonrenewal | | 4 |
| Q.   Other Insurance | | 5 |
| R.   Our Options | | 5 |
| S.   Pair, Set or Parts | | 5 |
| T.   Payment of Loss | | 5 |
| U.   Policy Period and Territory | | 6 |
| V.   Recovered Property | | 6 |
| W.   Right to Adjust with Owner | | 6 |

RM0002 02-11

**CONFIDENTIAL**

GOP.000215

**POLICY REFERENCE INDEX – (CONTINUED)**

| | Form Number | Beginning on Page |
|---|---|---|
| **CONDITIONS – (CONTINUED)** | RM1006 | |
| X.   Subrogation | | 6 |
| Y.   Suit | | 6 |
| Z.   Suspension | | 7 |
| A.A.   Titles of Paragraphs | | 7 |
| B.B.   Vacancy | | 7 |
| C.C.   Your Duties After a Loss | | 8 |
| **DEFINITIONS** | RM1007 | |
| A.   Accident | | 1 |
| B.   Actual cash value | | 1 |
| C.   Average daily value (ADV) | | 1 |
| D.   Business income | | 1 |
| E.   Covered location(s) | | 2 |
| F.   Covered loss | | 2 |
| G.   Covered property | | 2 |
| H.   Data | | 2 |
| I.   Data processing equipment | | 2 |
| J.   Earth movement | | 2 |
| K.   Effective date | | 2 |
| L.   Extra expense | | 2 |
| M.   Fine arts | | 2 |
| N.   First tier wind Counties and Parishes | | 2 |
| O.   Flood | | 3 |
| P.   Fungus | | 3 |
| Q.   Hail | | 3 |
| R.   Limit(s) of liability | | 3 |
| S.   Media | | 3 |

**CONFIDENTIAL**                                                                           GOP.000216

**POLICY REFERENCE INDEX – (CONTINUED)**

|  | Form Number | Beginning on Page |
|---|---|---|
| **DEFINITIONS – (CONTINUED)** | RM1007 | |
| T.   Miscellaneous location(s) | | 3 |
| U.   Mobile equipment or tools | | 4 |
| V.   Named Storm | | 4 |
| W.   New location(s) | | 4 |
| X.   New Madrid | | 4 |
| Y.   Object(s) | | 4 |
| Z.   Occurrence | | 5 |
| A.A.   Perils insured against | | 5 |
| B.B.   Period of restoration | | 5 |
| C.C.   Perishable goods | | 6 |
| D.D.   Personal property | | 6 |
| E.E.   Personal property of others | | 6 |
| F.F.   Policy period | | 7 |
| G.G.   Pollutant(s) | | 7 |
| H.H.   Pollution | | 7 |
| I.I.   Puget Sound | | 7 |
| J.J.   Real property | | 7 |
| K.K.   Replacement cost | | 7 |
| L.L.   Second tier wind Counties and Parishes | | 7 |
| M.M.   Sinkhole collapse | | 7 |
| N.N.   Software | | 8 |
| O.O.   Specified perils | | 8 |
| P.P.   Transit | | 8 |
| Q.Q.   Unscheduled location(s) | | 8 |
| R.R.   Valuable papers and records | | 8 |
| S.S.   Volcanic activity | | 9 |
| T.T.   We, us and our(s) | | 9 |
| U.U.   Wind | | 9 |
| V.V.   You and your(s) | | 9 |

RM0002 02-11

**CONFIDENTIAL**

GOP.000217

**POLICY REFERENCE INDEX – (CONTINUED)**

| | Form Number | Beginning on Page |
|---|---|---|

**ENDORSEMENTS**

    See POLICY INDEX

**CONFIDENTIAL**

GOP.000218

Policy Number YU2-L9L-426467-021

## RM SELECT™ POLICY

## POLICY INDEX

| TITLE | FORM NO. | EDITION DATE |
|---|---|---|
| SIGNATURE PAGE | RM0001 | 02-11 |
| POLICY REFERENCE INDEX | RM0002 | 02-11 |
| POLICY INDEX | RM0003 | 02-11 |
| PRODUCER OF RECORD INFORMATION | EN4008 | 01-11 |
| DECLARATIONS | RM1000 | 02-11 |
| COVERAGES | RM1001 | 09-08 |
| EXTENSIONS OF COVERAGES | RM1002 | 02-11 |
| EXCLUSIONS | RM1003 | 02-11 |
| PROPERTY NOT COVERED | RM1004 | 02-11 |
| VALUATIONS | RM1005 | 02-11 |
| CONDITIONS | RM1006 | 02-11 |
| DEFINITIONS | RM1007 | 02-11 |
| ADDITIONAL NAMED INSURED | RM1100 | 01-04 |
| SCHEDULE OF MORTGAGE HOLDERS OR LOSS PAYEES | RM1102 | 03-08 |
| FLOOD COVERAGE | RM1108 | 03-08 |
| INTERRUPTION OF SERVICES COVERAGE EXTENSION | RM1110 | 02-11 |
| PAYROLL EXPENSE LIMITATION OR EXCLUSION | RM1113 | 02-11 |
| ADDITIONAL DEDUCTIBLES AND WAITING PERIODS | RM1115 | 02-11 |
| STANDARD EXTENSIONS AMENDATORY | RM1119 | 03-08 |
| SPOILAGE OF PERISHABLE GOODS WHILE IN TRANSIT EXTENSION | RM1122 | 03-08 |
| EXCLUSION OF CERTIFIED ACT(S) OF TERRORISM | RM1143R1 | 03-08 |
| LOSS ADJUSTMENT AGREEMENT | RM1253 | 01-04 |
| ADDITIONAL FIRST TIER WIND COUNTIES AND INDEPENDENT CITIES (THE STATES OF VIRGINIA THROUGH AND INCLUDING MAINE) | RM1432 | 09-08 |
| ADDITIONAL SECOND TIER WIND COUNTIES AND INDEPENDENT CITIES (THE STATES OF VIRGINIA THROUGH AND INCLUDING MAINE) | RM1434 | 09-08 |
| EXTRA EXPENSE – TRANSIT AMENDATORY | RM1524 | 09-08 |
| LIVESTOCK COVERAGE EXTENSION | RM1618 | 02-11 |
| CALIFORNIA CHANGES | RM1804 | 03-09 |
| NEBRASKA CHANGES | RM1826 | 03-08 |
| NEBRASKA CHANGES - CANCELLATION | RM1926 | 03-08 |
| DISCLOSURE - TERRORISM RISK INSURANCE ACT | EN9052 | 03-08 |

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

RM0003 02-11

**CONFIDENTIAL**

GOP.000219

Policy number YU2-L9L-426467-021

## Important Notice

## PRODUCER OF RECORD INFORMATION

This policy has been issued by us to you through the following producer of record:

Name and Address of Producer of Record

HOLMES MURPHY & ASSOCIATES INC
2637 S 158TH PLZ STE 200

OMAHA, NE 68130

EN4008 01-11

CONFIDENTIAL

GOP.000220



**Liberty Mutual.**
Liberty Mutual Group
175 Berkeley Street  Boston, MA 02117

# RM SELECT™ POLICY

## DECLARATIONS

Policy number YU2-L9L-426467-021

| | |
|---|---|
| Named Insured and Mailing Address | Form of Business Corporation |
| Greater Omaha Packing Co Inc | Premium Will Be Billed Annually |
| PO Box 7566 Omaha  NE  68107 | |

**Policy Period:** 04/03/2011 to 04/03/2012 at 12:01 A.M. standard time at above mailing address.

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

| | |
|---|---|
| Premium (Excluding premium for "certified act(s) of terrorism" under the Terrorism Risk Insurance Act (TRIA), as amended): | $158,992 |
| Premium for "certified act(s) of terrorism" under the Terrorism Risk Insurance Act (TRIA), as amended: | $Declined |
| State or Municipal Taxes, Surcharges and Other Miscellaneous Charges: (See State or Municipal Taxes, Surcharges and Other Miscellaneous Charges Summary, Form RM0005, for breakdown) | $0 |
| Total Premium/Other Charges for Above Policy Period: | $158,992 |
| The Deposit Premium/Other Charges is: | $158,992 |

Issued By: Liberty Mutual Fire Insurance Company

By:

_____
Authorized Company Representative OR Countersignature (as required)

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

RM1000 02-11

CONFIDENTIAL

GOP.000221

# DECLARATIONS (Continued)

**A. Insuring Agreement**

Subject to all the terms and conditions of this policy, we will pay for risks of direct physical loss or damage to **covered property** as a result of an **occurrence**, unless excluded.

If this policy provides Equipment Breakdown coverage then subject to all the terms and conditions of this policy we will pay for direct physical loss or damage to **covered property** as a result of an **accident** to an **object**, unless excluded.

This policy consists of the forms and endorsements shown on the POLICY INDEX, Form RM0003, and any endorsements attached to the policy. Insurance is provided at those locations and for those coverages and **limits of liability** shown on the Schedule of this form. Extensions of coverage, sublimits of liability and deductibles are listed on this form. Endorsements may contain separate terms, conditions, deductibles and limits or sublimits of liability.

Words in **bold faced type** have special meanings in this policy. They are defined in DEFINITIONS, Form RM1007. These definitions apply to this entire policy, and to any endorsements to it. Definitions that apply to individual forms or endorsements will be italicized and noted in those forms or endorsements. The names of forms are capitalized (for example, DECLARATIONS).

**B. Coverages**

We provide the following coverages if they are marked with an "X". Coverages are provided in accordance with the terms of this policy. Terms that apply to individual coverage forms are set forth in those forms. This policy provides coverage on a replacement cost basis for real property, personal property, **personal property of others** and equipment breakdown except as indicated on VALUATIONS, Form RM1005, or any other forms or endorsements attached to this policy.

(X) **Real Property**
(X) **Personal Property, including personal property of others**
( ) Equipment Breakdown
(X) **Loss of Business Income**
    (X) **Real Property or Personal Property only**
    ( ) **Equipment Breakdown only**
    ( ) **Real Property or Personal Property and Equipment Breakdown**
(X) **Extra Expense**
    (X) **Real Property or Personal Property only**
    ( ) **Equipment Breakdown only**
    ( ) **Real Property or Personal Property and Equipment Breakdown**

**C. Limits of Liability**

We will not pay more than the applicable **limit of liability** shown on the Schedule of this form for any one (1) **occurrence** or any one (1) **accident** covered by this policy, nor will we pay for more than **your** interest in the lost or damaged property.

**D. Standard Extensions of Coverage**

Refer to A. of EXTENSIONS OF COVERAGE, Form RM1002, for the standard extensions of coverage, including sublimits of liability, provided by this policy.

**E. Optional Extensions of Coverage – Sublimits of Liability**

1. The sublimits of liability shown in E. 4. below apply to the Optional Extensions of Coverage defined in B. of EXTENSIONS OF COVERAGE, Form RM1002. If no sublimit is shown, no coverage is provided.

2. If a sublimit is shown in E. 4. below for **miscellaneous locations, new locations** and **unscheduled locations**, coverage may be limited or excluded elsewhere in this policy or its endorsements.

RM1000 02-11

CONFIDENTIAL

GOP.000222

## DECLARATIONS (Continued)

3. These sublimits are the most we will pay for any loss covered by these Optional Extensions of Coverage. For miscellaneous locations, new locations and unscheduled locations, the most we will pay for any loss or damage will be the lesser of:

    a. The sublimit shown below for miscellaneous locations, new locations or unscheduled locations; or

    b. The sublimit shown on any individual coverage form or endorsement.

4. Optional Extensions of Coverage:

    a. $1,000,000      Course of Construction;

    b. $2,000,000      Demolition Cost;

    c. $Included in 4b.      Increased Construction Cost;

    d. $47,192,733      Operation of Building Laws;

    e. $500,000      Errors and Omissions;

    f. $500,000      Exhibitions, Expositions, Fairs or Trade Shows;

    g. $1,000,000      at each miscellaneous location;

    h. $1,000,000      at each new location, for up to 90 days from the date such new location(s) is first purchased or rented, whichever is earlier;

    i. $25,000      on covered personal property in the custody of salespeople;

    j. $125,000      Transit;

    k. $No Coverage      at each unscheduled location.

F. Equipment Breakdown Coverage

    1. Equipment Breakdown limit of liability

    If marked with an "X" the following limits of liability apply:

    ( ) See the Schedule of this form;

    ( ) See Form Not Applicable; or

    ( ) Limit(s) of liability shown below are separate from any other applicable limit of liability or any sublimit of liability of this policy.

    $No Coverage      Damage to covered object(s), loss of business income, and extra expense;

    $No Coverage      Damage to covered object(s) and loss of business income;

    $No Coverage      Damage to covered object(s) and extra expense;

    $No Coverage      Damage to covered object(s);

    $No Coverage      Loss of business income and extra expense;

    $No Coverage      Loss of business income;

    $No Coverage      Extra expense.

RM1000 02-11

CONFIDENTIAL

GOP.000223

## DECLARATIONS (Continued)

2. For equipment breakdown extensions of coverage see EQUIPMENT BREAKDOWN EXTENSIONS OF COVERAGE, Form RM1250.

G. Deductible and waiting periods, except as indicated on any other forms or endorsements attached to this policy.

1. $25,000. Unless marked with an "X" in G. 2., or as provided in G. 3. below, we will not pay unless a covered loss from any one (1) occurrence exceeds the amount shown.

2. (X) See ADDITIONAL DEDUCTIBLES AND WAITING PERIODS, Form RM1115.

3. Equipment breakdown deductibles or waiting periods will be applied as specified below:

   a. If you have a combined deductible, we will not pay unless a covered equipment breakdown loss from any one (1) accident is more than:

   | | |
   |---|---|
   | $Not Applicable | for loss to covered object(s), loss of business income, and extra expense; |
   | $Not Applicable | for loss to covered object(s) and loss of business income; |
   | $Not Applicable | for loss to covered object(s) and extra expense |

   b. If one (1) or more deductible amounts are shown below, each will be applied separately.

   | | |
   |---|---|
   | $Not Applicable | Covered object(s). |
   | $Not Applicable | Loss of business income and extra expense. |
   | $Not Applicable | Loss of business income. |
   | $Not Applicable | Extra expense. |
   | Not Applicable | times the average daily value of loss of business income or extra expense during the period of restoration. |
   | Not Applicable | hours immediately following the accident for loss of business income or extra expense. |

   c. We will not pay for loss of business income, extra expense, or, to the extent perishable goods coverage is provided in EQUIPMENT BREAKDOWN EXTENSIONS OF COVERAGE, Form RM1250, unless a covered equipment breakdown loss from any one (1) accident to an object exceeds a waiting period of Not Applicable hours.

   Once the waiting period has been exceeded coverage will begin at the initial time of the interruption, and will be subject to the deductibles shown in G. 3.

   d. ( ) See ADDITIONAL DEDUCTIBLES AND WAITING PERIODS, Form RM1115.

Once a deductible or waiting period is exceeded, we will then pay for the excess, up to the applicable limit of liability.

If a covered loss, involves two (2) or more deductibles, we will use no more than the largest of the applicable deductibles except as provided in G. 3. b. or the ADDITIONAL DEDUCTIBLES AND WAITING PERIODS, Form RM1115.

CONFIDENTIAL

GOP.000224

## DECLARATIONS (Continued)

### Schedule

| No. | Location or Sub-location | Coverage | Limit of Liability |
|-----|--------------------------|----------|--------------------|
| | All covered locations as per Statement of Values on file with us, except as scheduled below.  Insurance does not apply at locations and/or coverages at locations unless a specific value is provided by you. | Blanket Real Property and Personal Property | $98,836,333 |
| | | Blanket Loss of Business Income | $26,500,000 |
| | | Blanket Extra Expense | $1,000,000 |

ADDITIONAL COVERAGE REMARKS:
Loss of Business Income applies at all covered Locations.

CONFIDENTIAL

GOP.000225

## DECLARATIONS (Continued)

List of Locations:

| Loc # | Address | City | State | Zip | Country |
|-------|---------|------|-------|-----|---------|
| 1.1 | 3001 L St<br>Bldg 1 | Omaha | NE | 68107-1409 | |
| 1.2 | 3001 L St<br>Bldg 1 | Omaha | NE | 68107-1409 | |
| 1.3 | 3001 L St<br>Bldg 3 | Omaha | NE | 68107 | |
| 2 | 4921 S 27th St | Omaha | NE | 68107-2735 | |
| 3 | 5120-5140 Race Ct | Denver | CO | 80216-2135 | |
| 4 | 851 Burlway Rd | Burlingame | CA | 94010-1720 | |
| 5 | 2523 Edward Babe Gomez Ave | Omaha | NE | 68107-4431 | |
| 6 | 5102 S 26th St | Omaha | NE | 68107-2731 | |
| 7 | 2424 O Street | Omaha | NE | 68107 | |
| 8 | 1600 Donner Ave | San Francisco | CA | 94124 | |

CONFIDENTIAL

GOP.000226

# COVERAGES

A.  If coverage for **real property** is provided as shown in **B.** Coverages of the DECLARATIONS, Form RM1000, we will pay for a **covered loss** to **your real property** at or within one-thousand (1,000) feet of a **covered location**.

B.  If coverage for **personal property** is provided as shown in **B.** Coverages of the DECLARATIONS, Form RM1000, we will pay for a **covered loss** to **your personal property**, including **personal property of others** and **valuable papers and records**, at or within one-thousand (1,000) feet of a **covered location**.

C.  If coverage for loss of **business income** is provided as shown in **B.** Coverages of the DECLARATIONS, Form RM1000, we will pay for:

   1.  The actual loss of **business income you** incur during a **period of restoration** directly resulting from damage by a **peril insured against** to the type of property covered by this policy at a **covered location**.

   2.  The necessary expenses **you** incur in excess of **your** normal operating expenses that reduces **your** loss of **business income**. **We** will not pay more than **we** would pay if **you** had been unable to make up lost production or continue operations or services.

   3.  The actual loss of **business income you** incur if **you** are denied access to a **covered location** by order of civil or military authority if:

      a.  the order results from a **covered loss**; or

      b.  the order results from damage by a **peril insured against** to the type of property covered by this policy within one (1) statute mile of a **covered location**.

      This coverage will apply for a period not to exceed twenty-one (21) consecutive days from the date of the order.

   4.  The actual loss of **business income you** incur if **your** ingress to or egress from a **covered location** is prevented as the direct result of a **peril insured against** to the type of property covered by this policy within one (1) statute mile of a **covered location**.

      This coverage will apply for a period not to exceed twenty-one (21) consecutive days from the date **your** ingress or egress is first prevented.

   5.  In determining the actual loss of **business income**, consideration must be given to:

      a.  The experience of the business before the loss and the probable experience after the loss;

      b.  The continuation of only those normal charges and expenses that would have been incurred had no interruption of production or suspension of business operations or services happened;

      c.  The demonstration of an actual loss of sales, income, or rental income; and

      d.  Any amount recovered, at selling price, for loss or damage to merchandise that will be considered to have been sold.

   6.  **We** will not pay unless **you** are wholly or partially prevented from:

      a.  producing goods; or

      b.  continuing business operations or services.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

CONFIDENTIAL

GOP.000227

## COVERAGES (Continued)

7. You are required to mitigate your loss by:

   a. Making up lost production within a reasonable period of time not limited to the **period of restoration.**

   b. Continuing business operations or services during the **period of restoration.**

   c. Using any property or service:

      (1) owned or controlled by you; or

      (2) obtainable from any other sources.

   d. Working extra time or overtime.

   e. Using inventory.

   We will not pay for any loss to the extent it can be reduced through these or any other means whether at a **covered location** or any other location.

8. We will not pay for:

   a. Any loss during any idle period. Idle period includes, but is not limited to, any period when production, operation or service would cease or be prevented due to:

      (1) physical damage not insured under this policy on or away from the **covered location;**

      (2) planned or rescheduled shutdown or maintenance;

      (3) strikes or other work stoppage; or

      (4) any reason other than a **covered loss.**

   b. Any increase in loss due to:

      (1) suspension, cancellation or lapse of any lease, contract, license or order.

      (2) fines or damage for breach of contract for late or non-completion of orders, or for penalties of any nature.

   c. Any consequential, indirect or remote loss.

   d. Any loss resulting from damage to:

      (1) finished goods manufactured by you, nor for the time required for their reproduction.

      (2) property in **transit.**

   e. Any loss or expense recoverable elsewhere in this policy.

9. The most we will pay for a loss under this coverage is the lesser of:

   a. Your actual loss of **business income** and necessary expense; or

   b. The applicable **limit of liability** shown on the Schedule of the DECLARATIONS, Form RM1000, or any endorsements to this policy.

RM1001 09-08                                                    Page 2 of 4

**CONFIDENTIAL**

**GOP.000228**

## COVERAGES (Continued)

**D.** If coverage for **extra expense** is provided as shown in **B.** Coverages of the DECLARATIONS, Form RM1000, we will pay for:

    **1.** The actual **extra expense** you incur during a **period of restoration** directly resulting from damage by a **peril insured against** to the type of property covered by this policy at a **covered location.**

    **2.** The actual **extra expense** you incur if you are denied access to a **covered location** by order of civil or military authority if:

        **a.** the order results from a **covered loss**; or

        **b.** the order results from damage by a **peril insured against** to the type of property covered by this policy within one (1) statute mile of a **covered location.**

    This coverage will apply for a period not to exceed twenty-one (21) consecutive days from the date of the order.

    **3.** We will not pay for:

        **a.** Loss of **business income.**

        **b.** Costs which would have been incurred in conducting **your** business during the same period had no **covered loss** happened.

        **c.** The cost of permanent repair or replacement of property that has been damaged or destroyed.

        **d.** Any loss during any idle period. Idle period includes, but is not limited to, any period when production, operation or service would cease or be prevented due to:

            **(1)** physical damage not insured under this policy on or away from the **covered location;**

            **(2)** planned or rescheduled shutdown or maintenance;

            **(3)** strikes or other work stoppage; or

            **(4)** any reason other than a **covered loss.**

        **e.** Any increase in loss due to:

            **(1)** suspension, cancellation or lapse of any lease, contract, license or order.

            **(2)** fines or damage for breach of contract for late or non-completion of orders, or for penalties of any nature.

        **f.** Any consequential, indirect or remote loss.

        **g.** Any loss resulting from damage to:

            **(1)** finished goods manufactured by **you**, nor for the time required for their reproduction.

            **(2)** property in **transit.**

        **h.** Any loss or expense recoverable elsewhere in this policy.

RM1001 09-08

**CONFIDENTIAL**

GOP.000229

## COVERAGES (Continued)

4. The most we will pay for a loss under this coverage is the lesser of:

   a. Your actual extra expense; or

   b. The applicable **limit of liability** shown on the Schedule of the DECLARATIONS, Form RM1000, or any endorsements to this policy.

E. If coverage for equipment breakdown is provided as shown in B. Coverages of the DECLARATIONS, Form RM1000, the following provisions apply to loss or damage that results from or is caused by an **accident** to a covered **object**:

   1. Exclusions B. 8., B. 9., B. 10. and B. 11. in EXCLUSIONS, Form RM1003, do not apply to a **covered loss** that result from an **accident** to covered **object(s)**.

   2. We will pay if an **accident** to covered **object(s)** causes:

      a. Loss to property **you** own;

      b. Loss to the property of others in **your** care, custody or control and for which **you** are legally liable.

   3. If direct loss or damage to an electrical **object(s)** results from the peril of **flood** we will pay for the amount **you** actually expend to dry out the **object(s)**.

   Our payment to **you** will:

      a. Be subject to the applicable direct damage **limit of liability** and deductible as shown in **F. 1.** and **G. 2.** of the DECLARATIONS, Form RM1000, for damage to covered **object(s)**; and

      b. Not exceed the value of the damaged **object(s)**.

RM1001 09-08

**CONFIDENTIAL**

GOP.000230

# EXTENSIONS OF COVERAGE

**A.  Standard Extensions of Coverage**

In the event of a **covered loss**, the coverage provided by this policy is extended as follows:

1.  Accounts Receivable

    a.  We will pay up to a limit of liability of $100,000 for the following expenses you incur directly resulting from loss or damage by a peril insured against to your records of accounts receivable at a covered location:

        (1)  Amounts due you from customers that you are unable to collect;

        (2)  Interest charges on any loan to offset amounts you are unable to collect, pending our payment of those amounts;

        (3)  Collection expense above your normal collection expense; and

        (4)  Reasonable expenses you incur to reestablish your records of accounts receivable.

    b.  For the purposes of this extension of coverage, the following additional exclusions apply and we will not pay for:

        (1)  Any loss that requires an audit or inventory to establish its existence;

        (2)  Any fraudulent, dishonest or criminal act done by:

            (a)  Anyone entrusted with the accounts receivables, including their employees and agents; or

            (b)  Anyone having an interest in the accounts receivable.

            This exclusion does not apply to the acts of a carrier for hire.

        (3)  Bookkeeping, accounting, or billing errors or omissions.

        (4)  Wrongful alteration, falsification, manipulation, concealment, destruction, or disposal of records of accounts receivable, committed to conceal the wrongful giving, taking, getting, or withholding of money, securities, or other property.

    c.  When records of accounts receivable have been damaged or destroyed, you must use all reasonable efforts, including legal action if necessary, to obtain collection of any outstanding accounts receivable, and we will pay such costs and expenses of obtaining collection to the extent they reduce your loss.

    d.  When records of accounts receivable have been damaged or destroyed, you will use any property or service owned or controlled by you or obtainable from other sources in order to reduce your loss.

    e.  If you are unable to accurately determine the amount of outstanding accounts receivable at the time of loss, our payment will be calculated in the following manner:

        Your average monthly accounts receivable amount, based on the twelve (12) months preceding the loss, adjusted for normal fluctuations in the month in which the loss occurs, or for any demonstrated variance for that month.

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

RM1002 02-11

CONFIDENTIAL

GOP.000231

## EXTENSIONS OF COVERAGE (Continued)

f.  The following will be deducted from the total amount of accounts receivable, regardless of the method used to determine that amount:

(1) Balances for accounts not damaged or affected by the loss;

(2) Amounts of accounts you are able to reestablish and collect;

(3) An allowance for bad debts you are not normally able to collect; and

(4) All unearned interest and service charges.

2. Arson Reward

If one (1) or more covered losses are caused by or result from any fires of a suspicious nature, we will pay a $25,000 reward to an individual or individuals provided:

a.  The individual(s) report(s) the suspected arsonist to local law enforcement officials; and

(1) The arsonist is apprehended, brought to trial, and convicted of arson to **your covered property;** or

(2) The arsonist is apprehended, confesses and/or pleads guilty to arson to **your covered property** without going to trial.

b.  Our payment of this reward will not be increased by:

(1) The number of individuals reporting the arsonist(s);

(2) The number of arsonists involved in the **covered loss;** or

(3) The number of covered losses.

No deductible applies to this extension of coverage.

3. Computer Virus and Denial of Access

We will pay up to $25,000 for loss or damage to, or any cost, claim or expense caused by or resulting directly or indirectly from any of the following, regardless of any other cause or event that contributes to the loss, damage, cost, claim or expense at the same time or in any sequence:

a.  The introduction of a malicious code, program, virus, worm, Trojan Horse program, macro time or logic bomb or similar unauthorized instruction which is designed or intended to damage, corrupt, destroy, distort, or delete any part of the system or disrupt its normal operation, into any of the following, whether owned by **you** or others:

(1) **Data processing equipment, software, data, or media;**

(2) Information repository;

(3) Hardware or software based computer operating systems;

(4) Microprocessors;

(5) Integrated circuits;

(6) Computer networks;

RM1002 02-11

Page 2 of 9

**CONFIDENTIAL**

GOP.000232

## EXTENSIONS OF COVERAGE (Continued)

    (7)  Website service; or

    (8)  Any other electronic equipment, computerized equipment, or similar device.

  **b.**  A change in the functionality, availability, operation, use of accessibility to or operation of any of the items described in 3. a. (1) – (8) above.

**4.  Debris Removal Expense**

  **a.**  We will pay for the expense to remove the debris from a **covered loss.**  We will only pay these expenses if we receive immediate written notice of the **covered loss** and if these expenses are reported to us in writing within one-hundred-eighty (180) days of the date of the **covered loss.**

  **b.**  Debris removal expense is limited to a sublimit of liability of $250,000.

  **c.**  We will pay up to $25,000 for expenses to remove from a **covered location,** windblown debris of property not covered by this policy.

  **d.**  Debris removal expense does not include any costs to clean up or remove **pollutants, fungus,** bacteria, wet or dry rot, or decay.

**5.  Deferred Payments**

  **a.**  We will pay up to a sublimit of liability of $25,000 for the uncollectable, unpaid balance owed you for direct physical loss or damage caused by or resulting from a **peril insured against** to **personal property** of the type covered by this policy that was sold by you under a conditional sale or trust agreement or any installment or deferred payment plan after the **personal property** has been delivered to **your** client and is now in their care, custody and control.

  **b.**  In the event of loss or damage caused by or resulting from a **peril insured against** to **personal property** sold under any of the payment plans shown in 5. a. above, you will use all reasonable effort, including legal action against **your** client, to:

    (1)  Collect any outstanding balance due **you;** or

    (2)  Regain possession of the **personal property.**

  **c.**  We will not pay for loss or damage caused by or resulting from:

    (1)  A recall of **your** product.  This includes but is not limited to **your** cost to recall, test or to advertise the recall.

    (2)  Theft or conversion of **your personal property** sold under any payment plan shown in 5. a. above by **your** client after they have taken possession of the **personal property.**

  **d.**  This extension of coverage only applies to **your personal property** sold under any of the payment plans shown in 5. a. above that is located within the territory of this policy.

  **e.**  Coverage provided by this extension does not apply if **your** client continues with their payments.

**6.  Duty to Defend**

  We will defend that part of any suit against **you** involving **personal property** of others when all of the following conditions exist:

RM1002 02-11

Page 3 of 9

**CONFIDENTIAL**

GOP.000233

## EXTENSIONS OF COVERAGE (Continued)

    a.   The suit seeks payment for physical loss or damage to the **personal property of others**; and

    b.   The physical loss or damage is caused by a **peril insured against**; and

    c.   The physical loss or damage takes place while the **personal property of others is in your** custody; and

    d.   The **personal property of others** is the type of property covered by this policy.

We will do so even if such suit is groundless, false or fraudulent, but **we** may, without prejudice, make such investigation, negotiation and settlement of any claim or suit, as we deem appropriate.

7.   Extended Period of Restoration

    a.   If loss of **business income** coverage is provided, we will pay the actual loss of **business income you** sustain due to a reduction in sales, earnings or rental income that directly results from direct physical loss or damage to your **covered property** by a **peril insured against**, for the additional time required, when **you** use reasonable speed, to restore **your** business to the condition it would have been in if no loss had occurred. This additional time starts with the time when the **period of restoration** would end, and continues for no more than sixty (60) consecutive days immediately following the **period of restoration**.

    b.   This extension of coverage does not apply if **you** elect not to either repair or replace **your covered property**, or to resume the operation of **your** business. For purposes of this extension of coverage the exclusions and restrictions in this policy regarding loss of **your** market share do not apply to any claim made under this extension of coverage.

8.   Fire Department Charges

We will pay charges **you** incur when the fire department is called to save or protect **covered property** from a **covered loss**.

9.   Fine Arts

We will pay up to a sublimit of liability of $100,000 for **covered loss** to **your fine arts**. We will not however pay for:

    a.   Loss or damage sustained from any repair, restoration, or retouching process;

    b.   Breakage of art glass windows, statuary, marble, glassware, bric-a-brac, porcelains, and similar fragile articles, unless caused by fire, lightning, aircraft, theft and or attempted theft, windstorm, **earth movement, flood**, explosion, vandalism, collision, derailment or overturn of conveyance; or

    c.   Loss or damage to **your fine arts** while away from a **covered location**.

10.  Fungus Cleanup Expense

    a.   If **fungus** results from a **covered loss** due to fire or lightning, we will pay up to the applicable **limit of liability** for the cost and expense:

        (1)   To remove **fungus** from **covered property** at a **covered location**;

        (2)   To repair or replace any undamaged portion of **covered property** at a **covered location** that must be removed to gain access to **fungus** in order to remove it; and

        (3)   To test for the presence of **fungus** on **covered property** at a **covered location** after **fungus** has been removed as provided by this extension.

**CONFIDENTIAL**

GOP.000234

## EXTENSIONS OF COVERAGE (Continued)

    **b.** If fungus results from a covered loss due to a peril insured against other than fire or lightning, we will pay up to $250,000 for the costs and expenses outlined in 10. a. (1) – (3) of this extension of coverage.

    **c.** In order for this extension of coverage to apply we must receive immediate written notice of the covered loss, and these costs and expenses must be reported to us in writing within one-hundred-eighty (180) days of the date of the covered loss.

    **d.** The removal and testing for fungus does not include any costs to remove pollutants.

**11.** Installation of Personal Property or Personal Property of Others

    We will pay up to $250,000 for direct physical loss or damage by a peril insured against to your personal property, or personal property of others, which you have sold under an installation agreement, if your responsibility continues until the purchaser accepts the installation. Installation coverage applies to any non-owned location within the policy territory.

**12.** Lock and Key Replacement

    **a.** When a master key or grand master key is lost or damaged from a covered loss, we will pay the lesser of:

        **(1)** The actual cost to replace keys;

        **(2)** The cost to rekey or reprogram the current locks to accept new keys; or

        **(3)** When needed, new locks including the installation and reprogramming of the new locks.

    **b.** The most we will pay in any one (1) occurrence for this extension of coverage is a sublimit of liability of $25,000.

**13.** Personal Property of Employees

    We will pay for loss or damage by a peril insured against to the personal property (other than vehicles) of your employees when such property is at a covered location or being used by the employee in the course of employment. We will not pay for any loss or damage to such property that occurs at the employee's residence.

**14.** Plants, Trees or Shrubs

    We will pay up to a sublimit of liability of $100,000 for a covered loss to plants, trees and shrubs, however loss or damage caused by freezing, disease or drought is excluded.

**15.** Pollution Cleanup Expense

    **a.** We will pay to remove pollutants from covered property at a covered location if the pollution results from a specified peril, subject to the applicable limit of liability.

    **b.** We will pay up to an annual aggregate limit of liability of $25,000 to remove pollutants from covered property at a covered location, if the pollution results from a peril insured against other than a specified peril.

    **c.** If pollution results from a peril insured against, we will pay up to an annual aggregate limit of liability of $25,000:

        **(1)** To remove pollutants from land, soil, surface or ground water upon, within, beneath or comprising a covered location; or

        **(2)** For testing performed in the course of extracting the pollutants from covered locations.

CONFIDENTIAL        GOP.000235

## EXTENSIONS OF COVERAGE (Continued)

We will pay for removal or testing after a covered loss that occurs during the policy period.

We will only pay these expenses if we receive immediate written notice of the covered loss and if these expenses are reported to us in writing within one-hundred-eighty (180) days of the date of the covered loss.

16. Professional Fees

    a.  We will pay up to $25,000 for the reasonable costs you incur, for auditors, architects, accountants and engineers whom you hire to prepare and verify the details of a claim from a covered loss.

    b.  Professional fees covered under this extension, however, do not include:

        (1)  any fees or expenses of attorneys;

        (2)  any fees or expenses of public adjusters or any of their subsidiaries or associated entities;

        (3)  fees based on a contingency; or

        (4)  the cost of your own employees.

17. Removal

    a.  We will pay the reasonable and necessary costs or expenses you incur:

        (1)  to remove covered property from locations under imminent threat by a peril insured against; and

        (2)  to return the covered property to the original location it had been removed from once the danger by a peril insured against has ended.

    b.  When covered property has been removed for this reason, it will be insured against loss or damage from a peril insured against at the temporary location according to the following terms:

        (1)  For up to ninety (90) days at each place to which the property has been taken for preservation;

        (2)  The applicable limit of liability will apply to each temporary location on a pro rata basis, based on the value your covered property stored at that location bears to the total value of covered property originally insured at the location under imminent threat.

The sublimits of liability, rewards or other amounts payable under these standard extensions of coverage do not increase and are not in addition to any other applicable limit of liability.

B. Optional Extensions of Coverage

These extensions of coverage apply only if the applicable sublimit of liability is shown in E. Optional Extensions of Coverage – Sublimits of Liability of the DECLARATIONS, Form RM1000.

1. Course of Construction

    a.  We will pay for direct physical loss or damage to real property of the type insured by this policy, including new additions and buildings at an existing covered location, that you begin to construct during the policy period.

        (1)  This coverage only applies for sixty (60) days from the date you begin construction.

CONFIDENTIAL

GOP.000236

## EXTENSIONS OF COVERAGE (Continued)

    (2) To continue this coverage beyond the sixty (60) days, **you** must:

        (a) Report newly constructed **real property** to **us** prior to the end of that sixty (60) day period; and

        (b) Pay premium from the date **you** begin construction.

  **b.** **We** will also pay under this extension of coverage for materials, supplies, machinery, equipment and fixtures, including those that are **personal property of others**, which are:

    (1) Intended by **you** for use in construction; and

    (2) Located on the construction site awaiting use in construction.

  **c.** This coverage only applies to the construction of **real property you** intend to own or occupy once constructed.

**2.** **Errors and Omissions**

If a covered loss is not payable under this policy solely because of an error or unintentional omission made by **you**:

  **a.** In the description of where covered property is physically located;

  **b.** To include any location:

    (1) owned, rented or leased by **you** on the effective date of this policy; or

    (2) purchased, rented or leased by **you** during the term of the policy; or

  **c.** That results in cancellation of the property insured under this policy, except for cancellation due to nonpayment of premium.

Then **we** will pay the amount **we** would have paid had the error or omission not been made, but not exceeding the **limit of liability** provided for Errors and Omissions shown on the DECLARATIONS, Form RM1000.

This coverage does not apply, however, if coverage is found, in whole or in part, elsewhere in this policy.

**3.** **Exhibitions, Expositions, Fairs or Trade Shows**

**We** will pay for loss or damage to **your personal property** while at an exhibition, exposition, fair or trade show.

Coverage also applies while **your personal property** is being transported between a **covered location** and the location of the exhibition, exposition, fair or trade show.

**4.** **Miscellaneous Locations**

**Miscellaneous locations** are insured for coverages marked with an "X" in B. Coverages of the DECLARATIONS, Form RM1000, and coverages provided by endorsement.

**5.** **New Locations**

  **a.** **New locations** are insured for coverages marked with an "X" in B. Coverages of the DECLARATIONS, Form RM1000, and coverages provided by endorsement for the period of time specified in E. 4. h. of the DECLARATIONS, Form RM1000.

RM1002 02-11

**CONFIDENTIAL**

GOP.000237

## EXTENSIONS OF COVERAGE (Continued)

    **b.** To continue this coverage beyond the time frame specified, **you** must:

       **(1)** Report new locations to **us** prior to the end of the period specified on the DECLARATIONS, Form RM1000; and

       **(2)** Pay premium from the date **you** purchase or rent these new locations.

**6.** Demolition Cost, Increased Construction Cost and Operation of Building Laws

    **a.** In the event of a **covered loss**, we will pay:

       **(1)** Demolition Cost

       The cost incurred to demolish all or part of **your covered real property**, including the cost to clear the site, if any law or ordinance that exists at the time of loss requires such demolition.

       **(2)** Increased Construction Cost

       The increased cost **you** incur for materials and labor required to rebuild the damaged portion of **your real property** at the same location and in a manner that satisfies the minimum requirements of the applicable law or ordinance existing at the time of the loss.

       **(3)** Operation of Building Laws

       The cost **you** incur to rebuild at the same location any undamaged part of **your real property** that is required by law to be demolished after a **covered loss**, excluding any costs associated with demolition. **We** will only pay the costs to satisfy the minimum requirements of the applicable law or ordinance that exists at the time of the loss.

    **b.** **We** will not pay for any of these costs:

       **(1)** Unless they are incurred within two (2) years from the date of loss.

       **(2)** If they are incurred due to any law or ordinance that:

          **(a)** **You** were required to comply with before the loss, even if the building was undamaged; and

          **(b)** **You** failed to comply with.

       **(3)** If they are associated with any demolition, abatement, removal, cleanup, debris removal, repair, monitoring or testing, increased cost of repair or other cost resulting from enforcement of any such law or ordinance which relates to **pollution, fungus, bacteria**, wet or dry rot, or decay.

**7.** Salespeople

    **a.** **Your covered personal property** in the custody of salespeople.

    **b.** Coverage does not apply to loss or damage by theft from the salespersons vehicle unless:

       **(1)** The vehicle is equipped with a fully enclosed body or compartment;

       **(2)** The doors, windows and hatches were securely locked; and

RM1002 02-11

**CONFIDENTIAL**

GOP.000238

## EXTENSIONS OF COVERAGE (Continued)

(3) There are visible signs of forced entry to the vehicle

at the time of loss.

8. **Transit**

    **Your** covered **personal property** while in **transit.**

    This extension of coverage also applies to **personal property of others** while in **transit** at **your** risk, but does not apply if **you** are acting as a common or contract carrier.

9. **Unscheduled Locations**

    **Unscheduled locations** are insured for coverages marked with an "X" in **B.** Coverages of the DECLARATIONS, Form RM1000, and coverages provided by endorsement.

The sublimits of liability or amounts payable under these optional extensions of coverage do not increase and are not in addition to any other applicable **limit of liability.**

RM1002 02-11

**CONFIDENTIAL**

GOP.000239

# EXCLUSIONS

## A. GROUP A EXCLUSIONS

We will not pay for loss or damage caused by or resulting from any of the following, regardless of any other cause or event, including a **peril insured against**, that contributes to the loss at the same time or in any other sequence:

1.  Loss attributable to:

    a.  War, including undeclared or civil war; or

    b.  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    c.  Insurrection, rebellion, revolution, usurped power, including action taken by a governmental authority in hindering or defending against any of these

    whether or not involving the use of any chemical, biological or nuclear substance.

2.  **Earth movement**, whether sudden or gradual.

    a.  If a loss to **covered property** by fire, theft, or explosion ensues, we will pay for that loss.

    b.  This exclusion does not apply to **covered property in transit**.

    c.  This exclusion does not apply to **sinkhole collapse** or **volcanic activity**.

3.  **Flood.**

    a.  If a loss to **covered property** by fire, theft, or explosion ensues, we will pay for that loss.

    b.  This exclusion does not apply to **covered property in transit**.

4.  **Fungus**, bacteria, wet or dry rot, decay.

    If a loss to **covered property** from a **specified peril** ensues, we will pay for that loss.

5.  **Pollution.**

6.  Demolition cost, operation of building laws and increased cost of construction including the enforcement of any ordinance or law regulating the use, construction, repair or demolition of buildings or structures.

7.  Seizure or destruction of **covered property** by government order.

    We will pay for loss to **covered property** resulting from acts of destruction ordered by government to prevent the spread of fire.

8.  Nuclear reaction or nuclear radiation, or radioactive contamination.

    If a loss to **covered property** by fire ensues, we will pay for that loss unless otherwise limited or excluded elsewhere in this policy, including any limits or exclusions applicable to terrorism.

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

CONFIDENTIAL

GOP.000240

## EXCLUSIONS (Continued)

9.  Interference with or interruption of any public or private utility or any entity providing electrical, heating, air conditioning, refrigeration, telecommunication, steam, water, sewer or fuel service or any other service, if the failure occurs away from the covered location.

    If a covered loss ensues, we will pay for that loss.

10. The actual or suspected presence or threat of any virus, organism or like substance that is capable of inducing disease, illness, physical distress or death, whether infectious or otherwise, including but not limited to any epidemic, pandemic, influenza, plague, SARS or Avian Flu.

11. Except as shown in A. 3. Standard Extensions of Coverage of EXTENSIONS OF COVERAGE, Form RM1002, loss attributable to:

    a.  The introduction of a malicious code, program, virus, worm, Trojan Horse program, macro time or logic bomb or similar unauthorized instruction which is designed or intended to damage, corrupt, destroy, distort, or delete any part of the system or disrupt its normal operation, into any of the following, whether owned by you or others:

        (1) Data processing equipment, software, data, or media;

        (2) Information repository;

        (3) Hardware or software based computer operating systems;

        (4) Microprocessors;

        (5) Integrated circuits;

        (6) Computer networks;

        (7) Website service; or

        (8) Any other electronic equipment, computerized equipment, or similar device.

    b.  Programming, operation or operator error of any of the items described in 11. a. (1) - (8).

    c.  Incompatibility, or the inability to properly interface between any of the items described in 11. a. (1) - (8).

    d.  A change in the functionality, availability, operation, use of, accessibility to or operation of any of the items described in 11. a. (1) - (8).

    e.  Inability, failure or malfunction of the items as described in 11. a. (1) - (8) or any services, functions, or products that use or rely upon in any manner one (1) or more of the items as described in 11. a. (1) - (8) to correctly recognize, distinguish, interpret, process, provide or accept data or one (1) or more dates or times.

    f.  Advice, consultation, evaluation, design, inspection, installation, repair, replacement or maintenance done by you or for you to determine or correct any conditions or problems described by in 11. a. - e.

    If loss to covered property by any of the following perils ensues, we will pay for that loss;

    a.  Fire;

    b.  Explosion; or

    c.  Leakage or accidental discharge from automatic fire protection system.

    However, we will not pay for modification, repair or replacement of systems or devices described in 11. a. (1) - (8) in order to correct any potential or actual deficiencies or to change any features.

RM1003 02-11                                                                                          Page 2 of 4

CONFIDENTIAL

# EXCLUSIONS (Continued)

**B.  GROUP B EXCLUSIONS**

We will not pay for loss or damage caused by or resulting from any of the following:

1.  Unexplained or mysterious disappearance of any property.

2.  Shortage of property discovered on taking inventory.

3.  Theft by employees, whether acting alone or with others.

4.  Any criminal, fraudulent or dishonest acts committed alone or in collusion with others:

    a.  By you;

    b.  By any of your associates, proprietors, partners, directors, trustees, officers, agents, employees or representatives; or

    c.  By any person or entity to whom you or any of your associates, proprietors, partners, directors, trustees, officers, agents, employees or representatives voluntarily relinquishes possession of covered property with or without your authority.

    However, acts of destruction, including vandalism, by employees to covered property shall not be subject to this exclusion.

5.  Manufacturing or processing operations, which result in damage to stock or materials while the stock or materials are being processed, manufactured, worked on or tested.

    If a covered loss ensues, we will pay for that loss.

6.  Delay, loss of market, loss of use, indirect or remote loss or damage.

7.  Loss attributable to:

    a.  Wear and tear, deterioration, depletion, erosion, rust, corrosion;

    b.  Inherent vice, latent defect, or any quality in the covered property that causes it to damage or destroy itself;

    c.  Smog, acid rain, agricultural smudging;

    d.  Smoke, fumes, gas or vapor that result from industrial operations;

    e.  Settling, cracking, shrinking, bulging or expansion of pavements, foundations, walls, floors, roofs or ceilings, retaining walls or outdoor swimming pools;

    f.  Animals, birds, vermin, rodents or insects;

    g.  Change or extremes in temperature or humidity, whether atmospheric or not, except damage to equipment; or

    h.  Contamination, shrinkage, change in taste, texture, finish or color.

    If a covered loss ensues, we will pay for that loss.

8.  Failure or breakdown of machinery or equipment, including rupture or bursting caused by centrifugal force.

    If a covered loss ensues, we will pay for that loss.

    This exclusion will not apply to physical loss to **data, data processing equipment or software.**

RM1003 02-11                                                                                          Page 3 of 4

**CONFIDENTIAL**                                                                          GOP.000242

## EXCLUSIONS (Continued)

9. Explosion of the following:

   a. Steam boilers;

   b. Steam turbines, steam engines, steam piping, electric steam generators; or

   c. Gas turbines.

   If a loss to **covered property** by fire or explosion ensues, we will pay for that loss.

10. Rupture, bursting, cracking, burning or bulging of the following:

    a. Steam boilers;

    b. Steam turbines, steam engines, steam piping, electric steam generators;

    c. Hot water boilers or other equipment for heating water;

    d. Pressure vessels; or

    e. Gas turbines.

    If a loss to **covered property** by fire or explosion ensues, we will pay for that loss.

11. Any electrical injury or disturbance to electrical appliances, devices, fixtures, wiring or other electrical or electronic equipment caused by electrical currents artificially generated.

    If a fire or an explosion loss ensues, we will pay for that loss.

    This exclusion will not apply to physical loss to:

    a. **Data or software** caused by injury, disturbance, or erasure resulting from electricity or magnetic fields; or

    b. **Data processing equipment** caused by short circuit, blowout, or other electrical damage.

12. Loss attributable to faulty, defective or inadequate:

    a. Construction, workmanship or material;

    b. Maintenance;

    c. Design, plan or specification;

    d. Developing, surveying or siting of buildings or structures during the course of construction or alterations.

    If a **covered loss** ensues, we will pay for that loss.

13. Loss or damage to bulkheads, piers, wharves, docks, seawalls or jetties from freezing or thawing, impact of watercraft, or by the pressure or weight of ice or water whether driven by wind or not.

14. Acts or decisions, including the failure to act or decide, of any governmental employee, agent, group, organization, agency or body.

    If a **covered loss** ensues, we will pay for that loss.

**CONFIDENTIAL**                                                                                        **GOP.000243**

# PROPERTY NOT COVERED

We do not cover loss to:

A.  Aircraft;

B.  Animals;

C.  Bridges or tunnels, however pedestrian walkways connecting buildings are covered;

D.  Caves, caverns, mines of any type, or any property contained within them;

E.  Contraband or property in the course of illegal transportation or trade;

F.  Currency, money, securities and negotiable instruments of any kind;

G.  Dams, dikes, levees;

H.  Furs, jewelry;

I.  Locomotives, including rolling stock;

J.  **Mobile equipment or tools,** when more than one-thousand (1,000) feet away from a covered location;

K.  Precious metal, except when used in industrial or service operations;

L.  Precious stones, except when used in industrial or service operations;

M.  Property insured under import or export ocean cargo policies;

N.  Property you transport as a common or contract carrier;

O.  Property shipped by mail, unless sent registered or certified;

P.  Vehicles, licensed for highway use, when more than one-thousand (1,000) feet away from a covered location.  If your vehicles, licensed for highway use, are covered for physical damage by other insurance, you agree that such other insurance is considered **your** primary coverage for any loss or damage that occurs;

Q.  Water, land, including land on which **covered property** is located, lawns, growing crops, or standing timber;

R.  Watercraft, except watercraft that is part of **your** inventory while being stored un-fueled and on dry land at a **covered location.**

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

RM1004 02-11

Page 1 of 1

**CONFIDENTIAL**

GOP.000244

# VALUATIONS

### A. Replacement Cost

1. Loss or damage to **covered property** will be valued at the time and place of the loss at replacement cost unless otherwise indicated in **B.** and **C.** below or by other forms or endorsements attached to this policy.

2. We will not pay replacement cost until the lost or damaged property is actually repaired or replaced. If repairs or replacement are not made within two (2) years after the date of the physical loss we will pay only the **actual cash value** amount.

   a. Our obligations for **replacement cost** will be the smaller of:

      (1) The cost to repair the damaged property; or

      (2) The cost to replace or rebuild with new materials of like size, kind and quality; or

      (3) The selling price of **your real property** or **personal property**, other than stock, that is offered for sale, less all saved expenses; or

      (4) The amount of **your** legal liability to the owner of **personal property of others**; or

      (5) The applicable **limit of liability**.

   b. We will not pay for any increase in cost due to **your** failure to use reasonable speed to repair, rebuild or replace the damaged property.

   c. If the replacement occurs at another location, we will not pay for the cost of land at either the original or the new **location**.

3. If **you** elect not to rebuild **your real property** after a covered loss, **you** may still make claim for the **covered loss** to **your real property** at replacement cost, excluding any amounts for demolition or increased cost of construction, provided;

   a. **you** actually spend those funds on capital expenditures to improve **real property** at **covered locations** within the policy territory;

   b. those capital expenditures were not planned as of the date of loss; and

   c. **you** make claim for the expenditure of these funds within two (2) years of the date of loss.

4. If an **object** requires replacement due to an **accident**, we will pay **your** additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.

   However, we will not pay more than one-hundred twenty-five (125) percent of what the cost would have been to repair or replace the **object(s)** with like kind and quality.

   This does not apply to any property subject to valuation based on **actual cash value**, nor does this provision increase any other applicable **limit of liability**.

   The **period of restoration** will not be increased by any of the above.

### B. Actual Cash Value

Loss or damage to these types of **covered property** will be valued at **actual cash value** at the time and place of loss:

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

RM1005 02-11

CONFIDENTIAL

GOP.000245

## VALUATIONS (Continued)

   a.  Manuscripts;

   b.  Mobile equipment or tools; and

   c.  Vehicles licensed for highway use.

**C.**  Other Valuations

Loss or damage to these types of covered property will be valued at the time and place of loss as follows:

1.  Exposed film

The value of unexposed film of the same type and quality.

2.  **Fine Arts**

   a.  The lesser of the:

     (1)  Reasonable or necessary restoration or repair costs needed to return the damaged article(s) to its condition as of the time of loss;

     (2)  Cost to replace the damaged article;

     (3)  Value specified for an article(s) if shown on a schedule of **fine arts** on file with **us**, or

     (4)  Value specified for an article(s) if shown on the schedule of any form or endorsement attached to this policy.

   b.  In the event of the total loss of an article or articles which are a part of a pair or set, we will pay **you** the full amount of the value of such set as determined in **C. 2. a.** above and **you** will surrender the remaining article or articles of the set to **us**.

3.  Finished goods manufactured by **you**

The regular cash selling price at the location where the loss happens, less all discounts and charges to which the merchandise would have been subject had no loss occurred.

4.  **Media, data,** programs or any **software** stored on electronic, electromechanical, electromagnetic **data processing equipment** or production equipment.

The cost of transferring such from backup or from originals of a previous generation. We will not pay for any other *cost*, including research, engineering or other cost of restoring or recreating lost **information**.

5.  Stock in process

The value of raw materials and labor expended plus the proper proportion of overhead charges.

6.  **Valuable papers and records**

The value blank, plus the cost of copying from backup or from originals of a previous generation. We will not pay for any other cost, including research, engineering or other cost, of restoring or recreating lost information.

**CONFIDENTIAL**

**GOP.000246**

# CONDITIONS

**A.** Abandonment of Property

You may not abandon property to us.

**B.** Appraisal

1. If you fail to agree with us on the amount of a loss, either party may demand that the disputed amount be submitted for appraisal. A demand for appraisal will be made in writing within sixty (60) days after our receipt of proof of loss. Each party will then choose a competent and disinterested appraiser. Each party will notify the other of the identity of its appraiser within thirty (30) days of the written demand for appraisal.

2. The two (2) appraisers will choose a competent and disinterested umpire. If the appraisers are unable to agree on an umpire within fifteen (15) days, you or we may petition a judge of a court of record in the state where the covered loss happened, to select an umpire.

3. The appraisers will then set the amount of the loss or damage. If the appraisers submit a written report of an agreement to you and us, the amount they agree on will be the amount of our payment for the loss or damage. If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two (2) of these three (3) will set the amount of loss or damage.

4. Each appraiser will be paid by the party that selects him or her. Other expenses of the appraisal and compensation of the umpire will be paid equally by you and us.

**C.** Assignment

Your assignment of this policy will not be valid except with our written consent.

**D.** Brands and Labels

In the event of a covered loss to branded or labeled merchandise, we may choose to take title to all or any part of that merchandise, at the value established by the terms of this policy. You may, at your expense:

1. Stamp "salvage" on the merchandise or its containers; or

2. Remove or obliterate the brands or labels if such removal or obliteration will not physically damage the merchandise. You must re-label the merchandise or containers in compliance with the requirements of law.

**E.** Breach of Condition

A breach of any condition of this policy at any covered location will not affect coverage at any other covered location where, at the time of loss or damage, no breach exists.

**F.** Cancellation

1. You may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. If this policy has been in effect for less than sixty (60) days and is not a renewal of a policy we issued, we may cancel this policy for any reason by giving you written notice of cancellation at least:

   a. Ten (10) days before the date of cancellation if we cancel for nonpayment of premium; or

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

RM1006 02-11

CONFIDENTIAL

GOP.000247

## CONDITIONS (Continued)

    **b.** Sixty (60) days before the date of cancellation if we cancel for any other reason.

**3.** If this policy has been in effect for sixty (60) days or more or is a renewal of a policy we issued, we may cancel this policy by giving you written notice of cancellation at least:

    **a.** Ten (10) days before the date of cancellation if we cancel for one (1) or more of the following reasons:

        **(1)** Nonpayment of premium;

        **(2)** Conviction of a crime arising out of acts increasing the likelihood of a covered loss;

        **(3)** Discovery of fraud or material misrepresentation by you in obtaining this policy or in pursuing a claim under this policy;

        **(4)** Discovery of any willful or reckless act or omission by you increasing the likelihood of a covered loss; or

        **(5)** A determination by the Commissioner of Insurance that continuation of the policy would violate or place us in violation of the law.

    **b.** Sixty (60) days before the date of cancellation if we cancel for one (1) or more of the following reasons:

        **(1)** Physical changes in the property, which increase the likelihood of a covered loss;

        **(2)** A material increase in the likelihood of a covered loss; or

        **(3)** Loss or decrease of our reinsurance covering the insurance provided by this policy.

**4.** If we cancel for nonpayment of premium, you may continue the coverage and avoid cancellation by making full payment any time prior to the date of cancellation.

**5.** Notice of Cancellation will be delivered or sent by;

    **a.** Registered mail;

    **b.** Certified mail; or

    **c.** First-Class mail.

We will mail or deliver the notice to your last mailing address known to us.

**6.** Notice of cancellation will state the reason for cancellation, and the effective date of cancellation. **The policy period will end on that date.**

**7.** If this policy is canceled, we will send to you any premium refund due. If we cancel, the refund will be pro rata. If you cancel, the refund will be 90% of pro rata. The cancellation will be effective even if we have not yet made or offered a refund.

**8.** If notice is mailed, proof of mailing will be sufficient evidence of notice.

**G.** Change of Terms

The terms of this insurance will not be waived, changed, or modified except by written endorsement issued by us and which becomes a part of this policy.

RM1006 02-11

Page 2 of 9

**CONFIDENTIAL**

**GOP.000248**

## CONDITIONS (Continued)

**H.  Collection from Others**

Payment to you for a covered loss will be reduced to the extent you have collected that loss from others.

**I.  Concealment, Misrepresentation or Fraud**

This entire policy is void, if with the actual intent to deceive

1. **You;**

2. **Your representatives;** or

3. **any insured;**

commit fraud or conceal or misrepresent a fact or circumstance concerning

1. This policy;

2. The covered property;

3. Your interest in the covered property; or

4. A claim under this policy.

**J.  Inspection**

1. During the period of this policy, we will be permitted, but not obligated, to inspect the covered property.  Neither our right to make inspections, nor making them, nor any report of them, will imply for you or others, nor constitute an undertaking, that the covered property is safe, healthful, or in compliance with laws, regulations, codes or standards.

2. This condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

   We will have no liability to you or others because of any inspection or failure to inspect.

**K.  Liberalization**

If, during the **policy period** or forty-five (45) days prior to the **policy period**, a filing of **ours** to a state insurance department would broaden this insurance without requiring any additional premium, then the terms and coverage of that filing will apply to **covered locations** and covered property within that state, effective on the dates specified within the filing.

**L.  Loss Payee**

In the event of a covered loss to property in which both you and a loss payee shown on the SCHEDULE OF MORTGAGE HOLDERS OR LOSS PAYEES, Form RM1102, have an insurable interest, we will:

1. Adjust the covered loss with you; and

2. Make payment for the covered loss to you and the loss payee jointly, as their interests may appear.

RM1006 02-11

Page  3  of  9

**CONFIDENTIAL**

GOP.000249

## CONDITIONS (Continued)

**M.** Mortgage Holders

    **1.** We will pay for covered loss to buildings or structures to each mortgage holder shown on the SCHEDULE OF MORTGAGE HOLDERS OR LOSS PAYEES, Form RM1102, as their interests may appear.

    **2.** A mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

    **3.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgage holder will still have the right to receive loss payment, up to the amount of their insurable interest, but in no event more than the applicable **limit of liability**, if the mortgage holder:

        **a.** Pays any premium due under this policy at **our** request;

        **b.** Submits a signed, sworn proof of loss within sixty (60) days after receiving notice from us of your failure to do so; and

        **c.** Has notified us of any change in ownership, occupancy, or substantial change in risk known to the mortgage holder.

    All terms and conditions of this policy will then apply directly to the mortgage holder.

    **4.** If we pay the mortgage holder for any **covered loss** and deny payment to you because you have failed to comply with the terms of this policy:

        **a.** The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

        **b.** The mortgage holder's right to recover the full amount of the mortgage claim will not be impaired.

    In the event of a **covered loss**, we will, at our option, pay the mortgage holder the whole principal of your mortgage plus any accrued interest. In that event, your mortgage and note will be transferred to us, and you will pay your remaining mortgage debt to us.

    **5.** If we cancel or nonrenew this policy, we will give the mortgage holder the same notice we give to **you**.

    **6.** The term "mortgage holder" includes trustee.

**N.** No Benefit to Bailee

    No person or organization, having custody of **your covered property**, will benefit from this policy.

**O.** No Reduction by Loss

    Except for those coverages written with an annual aggregate **limit of liability** or sublimits of liability, we will pay for a **covered loss** without reducing any other applicable **limit of liability** or sublimits of liability.

**P.** Nonrenewal

    **1.** If we decide not to renew this policy, we will mail or deliver a written notice of nonrenewal to you at least sixty (60) days before the expiration date of this policy. Notice will be sent to your last mailing address known to us. We will state the reason for nonrenewal.

RM1006 02-11

Page 4 of 9

**CONFIDENTIAL**

GOP.000250

## CONDITIONS (Continued)

2. This notice will be delivered or sent by:

   a. Registered mail;

   b. Certified mail; or

   c. First-Class mail.

3. If notice is mailed, proof of mailing will be sufficient evidence of notice.

Q. Other Insurance

   1. If there is any other insurance that would apply in the absence of this policy, we will pay for a covered loss only after the limits of all other applicable insurance are exhausted.

   2. If this policy is deemed by law to contribute to a loss with other insurance, we will pay only our proportionate share of the loss, up to the applicable limit of liability. Our share will be the proportion that the applicable limit of liability of this policy bears to the total applicable limits of liability available from all insurance.

   3. You are permitted to have other insurance over any limits or sublimits of liability specified in this policy.

   4. The existence of such insurance will not reduce any limit or sublimit of liability in this policy.

   5. To the extent this policy replaces another policy, coverage under this policy shall not become effective until such other policy has terminated.

R. Our Options

   At our option, we will repair, rebuild or replace damaged covered property with other property of like kind and quality within a reasonable period of time. If we elect to repair or replace the covered property, we will notify you of that decision within sixty (60) days of our receipt of your proof of loss. We will, at our option, take title to all or any part of the damaged or destroyed property at the agreed or appraised value.

S. Pair, Set or Parts

   In the event of a covered loss to an article that is part of a pair or set, our payment for that loss will be:

   1. The cost to repair or replace any part to restore the pair or set to its value before the covered loss; or

   2. The difference between the value of the pair or set before and after the covered loss.

   In no event will the loss of part of a pair or set be regarded as a total loss of the pair or set.

   When covered property consists of several parts, we will pay only for the lost or damaged part.

T. Payment of Loss

   We will pay the covered loss within thirty (30) days after we receive and accept the signed, sworn Proof of Loss, if:

   1. You have complied with all the terms of this policy;

CONFIDENTIAL

GOP.000251

## CONDITIONS (Continued)

2.   We have reached agreement with you on the amount of covered loss, or

3.   An appraisal award is made as provided for in Condition B. Appraisal.

U.   **Policy Period and Territory**

We will only pay for direct physical loss or damage to covered property of the type insured by this policy as the result of a **peril insured against** during the **policy period** shown on the DECLARATIONS, Form RM1000, while the covered property is:

1.   Within the continental United States of America, Hawaii and Puerto Rico;

2.   Being moved on land or in the air within or between the continental United States of America and Canada; or moved on land or in the air within Hawaii or Puerto Rico; or

3.   Being moved on inland waters and intercoastal waterways of the continental United States of America, or on any of the Great Lakes.

V.   Recovered Property

1.   If either you or we recover any covered property after we have paid for its loss, that party must give the other prompt written notice of the recovery.

2.   If we recover the covered property, we will return it to you, if you so request.  You must then return the amount we paid to you for it.

3.   If you recover the covered property, you may either keep it or surrender it to us.  If you choose to keep it, you must return the amount we paid to you for it.

W.   Right to Adjust with Owner

1.   Covered losses will be adjusted with you except as provided in Condition M. Mortgage Holders.

2.   If a claim is made for damage to covered property of others, we will have the right to adjust that loss or damage with the owners of that property.  Our payment to the owners will fully satisfy any claim of yours for damage to that property.

X.   Subrogation

1.   If we make payment for a loss, you will assign to us all your rights of recovery against any party for that loss.  We will not acquire any rights of recovery you have waived prior to the loss.  You agree to cooperate and not to waive, prejudice, settle or compromise any claim against any party after the loss has occurred.

2.   You will be paid any recovery, in the proportion that your deductible and any provable uninsured loss bears to the total loss less your proportion of fees and expenses.

Y.   Suit

No suit or other legal proceeding shall be brought against us unless there has been full compliance with all the policy terms and conditions.  Any suit against us must be brought within two (2) years after the date on which the direct physical loss or damage occurred, or the shortest time permitted by law, whichever is greater.

**CONFIDENTIAL**

GOP.000252

## CONDITIONS (Continued)

**Z.**   Suspension

If Equipment Breakdown is marked with an "X" in B. Coverages of the DECLARATIONS, Form RM1000, and we discover a dangerous condition relating to an **object**, we may immediately suspend the insurance provided by this coverage for that covered equipment by written notice mailed or delivered to **you** either at **your** address or at the location of any **object**. Suspended insurance may be reinstated by **us**, but only by an endorsement issued as part of this policy. **You** will be credited for the unearned portion of the premium paid for the suspended insurance, pro rata, for the period of suspension. The suspension will be effective even if we have not yet made or offered a refund.

**A.A.**   Titles of Paragraphs

The titles of the paragraphs of this policy and of any endorsements attached to it are only for reference. They do not affect the terms to which they relate.

**B.B.**   Vacancy

**1.**   If any of **your** real property:

    **a.**   is vacant at the inception of this policy; or

    **b.**   becomes vacant, and remains vacant for more than sixty (60) consecutive days, during the **policy period**;

it is a requirement of this policy that **you**:

    **(1)**   Notify **us** in writing of the vacancy prior to loss or damage; and

    **(2)**   Maintain in complete working order the protective safeguards present prior to the vacancy. Protective safeguards include, but are not limited to:

        **(a)**   Automatic sprinkler systems;

        **(b)**   Fire alarm systems;

        **(c)**   Guard or watchman services;

        **(d)**   Burglary systems; and

        **(e)**   Monitoring systems.

**2.**   If the above requirements are not met, then in addition to the other terms, conditions, limitations and exclusions in this policy, we will:

    **a.**   Not pay for any loss or damage caused by or resulting from any of the following:

        **(1)**   Breakage of building glass;

        **(2)**   Fungus (including fungus cleanup);

        **(3)**   Sprinkler leakage, unless the system has been protected against freezing;

        **(4)**   Theft or attempted theft;

        **(5)**   Vandalism;

**CONFIDENTIAL**          GOP.000253

## CONDITIONS (Continued)

       (6)  Malicious mischief; or

       (7)  Water damage.

   b.  Value the loss or damage for the vacant **real property** (including any loss or damage to **personal property**) at the time of loss at the smaller of:

       (1)  The **actual cash value;**

       (2)  The actual cost to repair; or

       (3)  The selling price, less all saved expenses, if it was being offered or listed for sale at the time of loss.

  **3.**  **Real property** is considered vacant unless at least thirty (30) percent of the square footage is:

   a.  Being used by **you** to conduct **your** customary operations; or

   b.  Rented by **you** to a tenant or sub-tenant and is being used by them to conduct their customary operations.

  **4.**  **Real property** is not considered vacant during its ongoing construction or renovation.

**C.C.**  **Your Duties After a Loss**

In case of loss **you** will:

  **1.**  Give **us** immediate written notice of the loss;

  **2.**  Give notice of such loss to the proper authorities if the loss may be due to a violation of the law;

  **3.**  As soon as possible, give **us** a description of the property involved and how, when and where the loss happened;

  **4.**  Take all reasonable steps to protect the **covered property** from further damage;

  **5.**  Promptly separate the damaged property from the undamaged property, and keep it in the best possible order for examination;

  **6.**  Furnish a complete inventory of the lost, damaged and destroyed property, showing in detail the quantity, and amount of loss claimed under the valuation provision of the policy;

  **7.**  Keep an accurate record of all repair costs;

  **8.**  Keep all bills, receipts and related documents that establish the amount of loss;

  **9.**  As often as may reasonably be required:

   a.  Permit **us** to inspect the damaged property and take samples for inspection, testing and analysis.

   b.  Produce for inspection and copying, all of **your** books of account, business records, bills and invoices.

   c.  Permit **us** to question, under oath, **you** and any of **your** agents, employees, or representatives involved in the purchase of this insurance or the preparation of **your** claim, including any public adjusters and any of their agents, employees or representatives, and verify **your** answers with a signed acknowledgment.

RM1006 02-11

**CONFIDENTIAL**

GOP.000254

## CONDITIONS (Continued)

10. Submit to **us**, within ninety (90) days from the date of loss, unless we extend the time in writing, a signed, sworn Proof of Loss that states to the best of your knowledge and belief:

   a. The time and cause of the loss;

   b. **Your** interest and the interest of all others in the property involved;

   c. Any other policies of insurance that may provide coverage for the loss;

   d. Any changes in title or occupancy of the property during the **policy period**; and

   e. The amount of your claimed loss.

   **You** shall also submit with the Proof of Loss:

   a. The inventory referred to in **C.C. 6.**;

   b. The records specified in **C.C. 7.** and **C.C. 8.**;

   c. Specifications for any damaged building; and

   d. Detailed estimates and invoices for the repair of any damage.

11. Cooperate with **us** in the investigation and adjustment of the loss.

**CONFIDENTIAL**

**GOP.000255**

## DEFINITIONS

A. **Accident** means a sudden, fortuitous event that causes direct physical damage to an **object(s)**, which requires that the **object(s)** be repaired or replaced, in whole or in part.

**Accident**, however, does not include any of the following:

1. Fire, including water or other means used to extinguish the fire;

2. Combustion explosion. This includes but is not limited to, a combustion explosion of any steam boiler or other fired vessel;

3. Discharge of molten material from equipment including the heat from such discharged material;

4. Depletion, deterioration, rust, corrosion, erosion, settling or wear and tear or any other gradually developing condition;

5. Misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance;

6. Lightning;

7. Any loss or damage caused by or resulting from any type of electrical or electronic insulation breakdown test; or

8. Any loss or damage caused by or resulting from any type of hydrostatic, pneumatic or gas pressure test.

B. **Actual cash value** means replacement cost less deduction for depreciation.

C. **Average daily value (ADV)** means your **business income** that would have been earned during the **period of restoration** had no loss happened, divided by the number of operating days in that period.

The **average daily value (ADV)** applies to the **business income** value of the entire **covered location** whether or not the loss effects the entire **covered location**. If more than one (1) **covered location** is included in the valuation of the loss, the **average daily value (ADV)** will be the combined value of all **covered locations**.

D. **Business income** means:

Gross earnings, including rental income, plus all other earnings derived from the operation of the business, less all charges and expenses which do not necessarily continue.

For example:

1. Manufacturing operations:

The net sales value of production less the cost of all raw stock, materials and supplies utilized in such production.

2. Mercantile or nonmanufacturing operations:

The net sales less the cost of merchandise sold and materials and supplies consumed in the operations or services rendered by you.

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

CONFIDENTIAL

GOP.000256

## DEFINITIONS (Continued)

3. Property rental operations:

The total expected gross rental income from tenant occupancy of your covered location(s). This also includes all charges which are the legal obligation of your tenants, which would otherwise be your obligations, and the fair rental value of any portion of your covered location(s) which you occupy.

E. **Covered location(s)** means those locations shown on the Schedule of the DECLARATIONS, Form RM1000, or on the Schedule of any endorsement to this policy.

F. **Covered loss** means a loss to covered property at a covered location resulting from a peril insured against.

G. **Covered property** means property insured by this policy.

H. **Data** means any information recorded on media and used in your processing operations.

I. **Data processing equipment** means processing units, terminals, tape drives, disk drives, controllers, printers, and other equipment capable of receiving, processing, storing or retrieving information.

J. **Earth movement**, whether natural or man-made, includes but is not limited to:

1. Earthquake;

2. Landslide;

3. Mudflow or mudslide; or

4. Sinking, rising or shifting of the earth.

K. **Effective date** means the day and time at which the insurance provided by this policy begins.

L. **Extra expense** means the reasonable and necessary extra costs:

1. Incurred to temporarily continue as nearly normal as practicable the conduct of your business; or

2. Of temporarily using property or facilities of yours or others.

3. For purposes of applying the above provision "normal" means the condition that would have existed had no covered loss happened.

M. **Fine arts** means property of rarity, antiquity, or artistic merit, including but not limited to paintings; etchings; pictures (including their negatives); tapestries; statuary; marbles; bronzes; antique jewelry; antique furniture; antique silver; rare books; porcelains; rare or art glassware; art glass windows; valuable rugs; bric-a-brac and porcelains.

N. **First tier wind Counties and Parishes** means the Counties and Parishes in the States as follows:

Baldwin and Mobile Counties in the State of Alabama;

All Counties in the State of Florida;

Bryan, Camden, Chatham, Glynn, Liberty and McIntosh Counties in the State of Georgia;

**CONFIDENTIAL**

GOP.000257

## DEFINITIONS (Continued)

The Hawaiian Islands;

Cameron, Iberia, Jefferson, Lafourche, Orleans, Plaquemines, St Bernard, St Mary, St Tammany, Terrebonne and Vermilion Parishes in the State of Louisiana;

Hancock, Harrison, and Jackson Counties in the State of Mississippi;

Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Currituck, Dare, Hyde, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, and Washington Counties in the State of North Carolina;

Beaufort, Charleston, Colleton, Georgetown, Horry and Jasper Counties in the State of South Carolina;

Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Jefferson, Kenedy, Kleberg, Matagorda, Nueces, Refugio, San Patricio and Willacy Counties in the State of Texas; and

The Commonwealth of Puerto Rico.

**O. Flood** means:

1. The release of water from, or the rising, overflowing, or breaking of boundaries of rivers, lakes, streams, ponds, or other natural or man-made bodies of water; or

2. Waves, tides, tidal waves, surface water, rain accumulation or runoff.

**Flood** includes spray from any of them, all whether driven by wind or not.

**P. Fungus** means any of a major group (fungi) of saprophytic and parasitic lower plants that lack chlorophyll and include but are not limited to molds, rusts, mildews, smuts, mushrooms, and yeasts, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**Q. Hail** means precipitation composed of concentric layers of clear ice and hardened snow in the shape of stones ranging in size from pea to softball or larger.

**R. Limit(s) of liability** means the maximum amount we will pay for a covered loss.

**S. Media** means the medium on which data or software is stored, such as magnetic tape, perforated paper tape, punch cards, media cards, discs, drums, and other storage devices used in your data processing equipment.

**T. Miscellaneous location(s)** means a location other than:

1. A covered location;

2. A new location;

3. An unscheduled location;

4. A location where covered property is at an exhibition, exposition, fair or trade show; or

5. A location for which coverage is found, in whole or in part, elsewhere in this policy including any coverage under errors and omissions.

RM1007 02-11

**CONFIDENTIAL**

GOP.000258

## DEFINITIONS (Continued)

**U. Mobile equipment or tools** means your machinery and equipment principally used by you or your employees away from a covered location, including:

    1.  Tools, whether powered or not; and

    2.  Machinery and equipment that is attached to a vehicle licensed for highway use.

**Mobile equipment or tools** does not, however, include vehicles licensed for highway use.

**V. Named Storm** means any storm or weather disturbance that is named by the U.S. National Weather Service. All damage resulting from a single **named storm** that occurs within a continuous seventy-two (72) hour period will be considered a single occurrence.

**W. New location(s)** means real property you purchase or rent, including personal property at that location, after the effective date of this policy.

**X. New Madrid** means the Counties and Independent Cities in the States as follows:

Clay, Craighead, Crittenden, Cross, Greene, Independence, Jackson, Lawrence, Lee, Mississippi, Monroe, Phillips, Poinsett, Randolph, St Francis, White, and Woodruff Counties in the State of Arkansas;

Alexander, Franklin, Gallatin, Hamilton, Hardin, Jackson, Johnson, Massac, Perry, Pope, Pulaski, Randolph, Saline, Union, and Williamson Counties in the State of Illinois;

Ballard, Calloway, Carlisle, Crittenden, Fulton, Graves, Hickman, Livingston, Lyon, Marshall, and Mccracken Counties in the State of Kentucky;

Desoto, Marshall, Tate, and Tunica Counties in the State of Mississippi;

Bollinger, Butler, Cape Girardeau, Carter, Dunklin, Iron, Jefferson, Madison, Mississippi, New Madrid, Perry, Pemiscot, Reynolds, Ripley, St Charles, St Francois, St Louis, Ste Genevieve, Scott, Stoddard, and Wayne Counties and the Independent City of St. Louis in the State of Missouri;

Crockett, Dyer, Fayett, Gibson, Hardeman, Haywood, Henry, Lake, Lauderdale, Madison, Obion, Shelby, Tipton, and Weakley Counties in the State of Tennessee.

**Y. Object(s)** means the following:

    1.  Unless specified otherwise in an endorsement to this policy:

        a.  Equipment at a **covered location** that generates, transmits or utilizes energy including electronic communications and data processing equipment.

        b.  Equipment at a **covered location** which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

    2.  **Object(s)** does not include any of the following:

        a.  Structure, including but not limited to the structural portions of buildings and towers, scaffolding, and any air supported structure;

        b.  Foundation;

**CONFIDENTIAL**

GOP.000259

## DEFINITIONS (Continued)

    c.  Cabinet, compartment, conduit or ductwork;

    d.  Insulating or refractory material;

    e.  Buried vessels or piping;

    f.  Waste, drainage or sewer piping;

    g.  Piping, valves or fittings forming a part of a sprinkler or fire suppression system;

    h.  Water piping that is not part of a closed loop used to conduct heat or cooling from a boiler or refrigeration or air conditioning system;

    i.  Vehicle or any equipment mounted on a vehicle;

    j.  Satellite, spacecraft, or any equipment mounted on a satellite or spacecraft;

    k.  Dragline, excavation or construction equipment;

    l.  Equipment manufactured by you for sale; or

    m.  Data.

**Z.**   **Occurrence** means all loss or damage attributable directly or indirectly to one (1) cause or series of similar causes. All such loss or damage will be added together, and the total loss or damage will be treated as one (1) occurrence irrespective of the amount of time or area over which such loss or damage occurs.

**A.A.**   **Perils insured against** means causes of loss for which this policy provides coverage.

**B.B.**   **Period of restoration** means;

    **1.**  For buildings and equipment, the period of time

        a.  starts at the time of a covered loss and,

        b.  ends when using reasonable speed the building and equipment could be:

            (1)  repaired or replaced; and

            (2)  made ready for operations;

    under the same or equivalent physical and operating conditions that existed prior to the damage.

    **2.**  For buildings in the course of construction:

        a.  We will apply the time period defined in B.B. 1. above to the level of business that would have been reasonably achieved after construction and startup would have been completedhad no physical damage happened; and

        b.  We will give consideration to the actual experience of the business after completion of the construction and startup.

**CONFIDENTIAL**

**GOP.000260**

## DEFINITIONS (Continued)

3. For stock in-process and mercantile stock, including finished goods not manufactured by you, the time required using reasonable speed:

   a. To restore stock in process to the same state of manufacture which existed at the beginning of the interruption of production or suspension of business operations or services; and

   b. To replace physically damaged mercantile stock.

4. For raw materials and supplies, the period of time:

   a. Of actual interruption of production or suspension of operation or services which results from your inability to obtain suitable replacement raw materials and supplies; but

   b. Limited to that period for which the damaged raw materials and supplies would have satisfied operating needs.

5. For **valuable papers and records**, the time required using reasonable speed to copy the physically damaged **valuable papers and records** from backup or from originals of a previous generation. This time does not include research, engineering or any other time necessary to restore or recreate lost information.

6. For data, programs, or other software, the time required using reasonable speed to restore the physically damaged or destroyed data, programs, or other software from backup. This time does not include research, engineering or any other time necessary to restore or recreate lost information.

7. The **period of restoration** does not include any additional time due to **your** inability to resume operations for any other reason, including but not limited to:

   a. Making changes to equipment.

   b. Making changes to the buildings, or structures, except as provided in the Demolition Cost, Increased Construction Cost and Operation of Building Laws provision, if a **limit of liability** is shown in **E. 4. b., E. 4. c.** or **E. 4. d.** of the DECLARATIONS, Form RM1000, attached to this policy.

   c. Restaffing or retraining employees.

   d. Any law or ordinance that requires testing, monitoring, clean up, removal, decontamination, treatment, detoxification or neutralization of, or any other response to **pollution or pollutant(s)**.

8. The expiration of this policy will not terminate the **period of restoration**. In no event will the **period of restoration** exceed twenty-four (24) months from the date of loss.

C.C.   **Perishable goods** means any covered property subject to deterioration or impairment as a result of a change in conditions including but not limited to temperature, humidity or pressure.

D.D.   **Personal property** means your tangible things, other than **real property**, including improvements and betterments you have made in buildings you do not own.

E.E.   **Personal property of others** means tangible things you do not own, other than **real property**, that are:

1. Sold by you that you agreed, prior to loss, to insure for the account of the purchaser during delivery;

2. In **your** custody which you agreed, prior to loss, to insure; or

RM1007 02-11

**CONFIDENTIAL**

GOP.000261

## DEFINITIONS (Continued)

3.  In your care, custody or control, and for which you are legally liable, but only to the extent of your insurable interest therein.

F.F.  **Policy period** means the time during which insurance is provided by this policy.

G.G.  **Pollutant(s)** means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, fiber, smoke, vapor, soot, fumes, acids, alkalis, chemicals, biological, organic or bacterial agents and waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed. However, pollutant(s) does not include ammonia.

H.H.  **Pollution** means the presence, discharge, dispersal, seepage, migration, release or escape of any pollutant(s).

I.I.  **Puget Sound** means the Counties of Clallam, Island, Jefferson, King, Kitsap, Mason, Pierce, San Juan, Skagit, Snohomish, Thurston, and Whatcom in the State of Washington.

J.J.  **Real property** means buildings and any other structure, including:

1.  Completed additions, extensions, permanent fittings or fixtures;

2.  Machinery and equipment used to service the buildings;

3.  Yard fixtures.

K.K.  **Replacement cost** means the cost to replace covered property:

1.  With new materials of like kind and quality and used for the same purpose; and

2.  At the location where the loss happened.

But **replacement cost** excludes any increased cost of repair or reconstruction by reason of any law or ordinance regulating construction, repair or use.

L.L.  **Second tier wind Counties and Parishes** means the Counties and Parishes in the States as follows:

Clarke, Covington, Escambia, Geneva, Monroe, and Washington Counties in the State of Alabama;

Brantley, Brooks, Bulloch, Charlton, Effingham, Evans, Long, Tattnall, Thomas, and Wayne Counties in the State of Georgia;

Acadia, Assumption, Calcasieu, Iberville, Jefferson Davis, Lafayette, St Charles, St James, St John the Baptist, St Martin, Tangipahoa and Washington Parishes in the State of Louisiana;

George, Pearl River, and Stone Counties in the State of Mississippi;

Bladen, Columbus, Craven, Duplin, Gates, Halifax, Hertford, Jones, Lenoir, Martin, Northampton, Pitt and Sampson Counties in the State of North Carolina;

Bamberg, Berkeley, Dillon, Dorchester, Hampton, Marion and Williamsburg Counties in the State of South Carolina;

Bee, Brooks, Fort Bend, Goliad, Hardin, Harris, Hidalgo, Jackson, Jim Wells, Liberty, Live Oak, Orange, Victoria, and Wharton Counties in the State of Texas.

M.M.  **Sinkhole collapse** means loss to covered property resulting from the sudden sinking or collapse of any land into naturally occurring underground empty spaces created by the action of water on limestone or similar rock formations. Coverage for sinkhole collapse does not include the cost of filling sinkholes.

**CONFIDENTIAL**                                                                                         GOP.000262

## DEFINITIONS (Continued)

**N.N.**   **Software** means programs stored on **media** that instruct **data processing equipment** how to process data.

**O.O.**   **Specified perils** means direct physical loss or damage caused by or resulting from:

    1.   Fire;

    2.   Lightning;

    3.   Aircraft;

    4.   Explosion;

    5.   Riot;

    6.   Civil commotion;

    7.   Smoke;

    8.   Vehicles;

    9.   **Wind or hail;**

    10.   Malicious mischief;

    11.   Leakage or accidental discharge from automatic fire protection system;

    12.   Collapse.

**P.P.**   **Transit** means the conveyance of **your personal property** within the **policy period** and territory as specified in this policy, from the time it leaves the original point of shipment until it arrives at its intended destination.

This period includes:

    1.   While the property is in the care, custody or control of hired carriers; and

    2.   Transfers between conveyances.

**Transit** does not include **personal property** while in the custody of **your** salespeople, or while being conveyed between a **covered location** and the location of an exhibition, exposition, fair or trade show.

Should this policy expire or be canceled after the property leaves the original point of shipment but before it arrives at its intended destination, coverage will continue on this **personal property** until it arrives at its intended destination.

**Q.Q.**   **Unscheduled location(s)** means:

    1.   **Real property** reported to **us**, but not shown on the Schedule of the DECLARATIONS, Form RM1000, which **you** owned or rented before the effective date; and

    2.   Locations reported to **us**, but not shown on the Schedule of the DECLARATIONS, Form RM1000, at which **you** had **personal property** before the effective date other than new **locations.**

**R.R.**   **Valuable papers and records** means written or printed documents or records including books, maps, negatives, drawings, abstracts, deeds, mortgages and manuscripts.

RM1007 02-11

**CONFIDENTIAL**

**GOP.000263**

## DEFINITIONS (Continued)

**S.S.**    **Volcanic activity** means direct physical loss or damage to **covered property** directly resulting from:

     **1.**   Airborne volcanic blast or shockwave;

     **2.**   Ash, dust or particulate matter; or

     **3.**   Lava flow.

     All **volcanic activity** resulting from volcanic eruptions occurring within any one-hundred sixty-eight (168) hour period will constitute a single occurrence.

     **Volcanic activity** does not include the cost to remove ash, dust or particulate matter that does not cause direct physical damage to **covered property**.

**T.T.**    **We, us and our(s)** means the company issuing this policy, as shown on the DECLARATIONS, Form RM1000.

**U.U.**    **Wind** means the direct action of the movement of air at any velocity.

**V.V.**    **You and your(s)** mean the named insured shown on the DECLARATIONS, Form RM1000.

**CONFIDENTIAL**

**GOP.000264**

Policy number YU2-L9L-426467-021

This endorsement is effective 04/03/2011 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ADDITIONAL NAMED INSURED

This endorsement modifies insurance provided under the following:

CONDITIONS, Form RM1006

We will provide insurance under this policy to each of the persons or organizations shown as an additional named insured on the Schedule of this endorsement.

We will adjust any covered loss only with you.

You will pay the premium for the insurance we provide to the additional named insureds. In the event that you become bankrupt or insolvent, each additional named insured shall pay the premium for the insurance it receives.

We will make our payment jointly to you and any person or organization shown on the Schedule.

Schedule

| Additional Named Insured | Location |
|---|---|
| High Country Meats | Per Statement of Values on file with us |
| Trex Corporation | |
| Progressive Protein, LLC | |
| Progressive Procurement, LLC | |

To the extent you are required by contract to provide insurance, your affiliated, subsidiary, associated companies or corporations and your interest in partnerships and joint ventures as now exist or may hereafter be constituted or acquired.

Copyright 2004, Liberty Mutual Group of Companies - all rights reserved.

RM1100 01-04

Page 1 of 1

**CONFIDENTIAL**

**GOP.000265**

Policy number YU2-L9L-426467-021

This endorsement is effective 04/03/2011 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SCHEDULE OF MORTGAGE HOLDERS OR LOSS PAYEES

| Location | Description of Property | Name and Address of Mortgage Holder or Loss Payee | Interests ("M" for Mortgage Holder) ("LP" for Loss Payee) |
|---|---|---|---|

Per certificates of insurance on file with us

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

RM1102 03-08

Page 1 of 1

**CONFIDENTIAL**

Policy number YU2-L9L-426467-021

This endorsement is effective 04/03/2011 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## FLOOD COVERAGE

This endorsement modifies insurance provided under the following:

      EXCLUSIONS, Form RM1003

1. We will pay for direct physical loss or damage to **covered property** caused by **flood** within a state(s) or at a location(s) shown on the Schedule of this endorsement.

   In addition, if coverage is provided for **business income** or **extra expense** in B. Coverages of the DECLARATIONS, Form RM1000, we will pay for covered loss of **business income** or **extra expense** that results from direct physical loss or damage to **covered property** caused by **flood** within a state(s) or at a location(s) shown on the Schedule of this endorsement.

   All **flood** losses within a continuous seventy-two (72) hour period will be considered a single occurrence. The expiration of this policy will not reduce this seventy-two (72) hour period.

2. **Limit of Liability**

   The following **limits of liability** do not increase and are not in addition to any other applicable **limit of liability**.

   A. The most we will pay for all loss or damage, including any loss of **business income** or **extra expense**, for each occurrence of **flood** loss within a state(s) or at a location(s) shown on the Schedule of this endorsement will be the lesser of the applicable **limit of liability** shown on:

      (1) The DECLARATIONS, Form RM1000;

      (2) EXTENSIONS OF COVERAGE, Form RM1002;

      (3) The Schedule of this endorsement for that particular state or the particular location(s); or

      (4) Any other applicable endorsement to this policy.

   B. The most we will pay for all loss or damage caused by **flood**, including any loss of **business income** or **extra expense**, during any one (1) policy year is $5,000,000.

3. Deductible Amount

   A. We will not pay for a **flood** loss until the loss exceeds either the applicable flat amount deductible or percentage deductible shown for that particular state or the particular location(s) shown on the Schedule of this endorsement. We will then pay the amount of loss in excess of the applicable deductible, up to the applicable **limit of liability**.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

**CONFIDENTIAL**

**GOP.000267**

## FLOOD COVERAGE (Continued)

**B.** If a percentage deductible is shown on the Schedule of this endorsement, the deductible amount will be determined as follows:

We will not pay for a flood loss until the loss exceeds the greater of:

**(1)** The sum of multiplying the deductible factor shown on the Schedule of this endorsement for a particular state or location(s) times:

    **a.** the total reported values on file with us for the **covered property** at the **covered location** when and where the loss occurred; plus

    **b.** the full annual **business income** value which **you** would have earned in the twelve (12) month period following the loss had no loss occurred; or

**(2)** The corresponding minimum deductible amount also shown for that particular state or the particular location(s).

We will then pay the amount of the loss in excess of the greater of these two (2) amounts up to the applicable **limit of liability**.

**C.** These deductibles do not apply to **covered property in transit**.

**D.** If indicated by an asterisk (*) after the deductible amount, a separate deductible amount will apply to any **covered property**, loss of **business income**, **extra expense**, or any other coverage or peril listed on the Schedule of this endorsement.

**4.** This endorsement does not apply to, and no **flood** coverage is provided for, the following coverage(s):

Not Applicable

**5.** This endorsement does not apply to, and no **flood** coverage is provided for, any **covered property** situated in or at the following state(s) and location(s):

Not Applicable

Refer to the last page of this endorsement for the Schedule of States and Locations for which **flood** coverage is provided by this policy.

**CONFIDENTIAL**

GOP.000268

## FLOOD COVERAGE (Continued)

Schedule of States and Locations

| Loc. No. | State or Location | Limit of Liability per occurrence | Limit of Liability in any one (1) policy year | Deductible Amount |
|---|---|---|---|---|
| | Subject to Paragraphs 1-5 of this endorsement, unless a different limit of liability applies for any reason (including any limits of liability listed below), this is the limit of liability for all direct physical loss or damage to covered property caused by flood (including any resulting loss of business income or extra expense if those coverages are provided in B. Coverages of DECLARATIONS, Form RM1000) | $5,000,000 | $5,000,000 | $100,000 |
| | Other Locations/Coverages | | | |
| | Form RM1002, Miscellaneous Locations | $1,000,000 | $1,000,000 | $100,000 |
| | Form RM1002, New Locations | $1,000,000 | $1,000,000 | $100,000 |

CONFIDENTIAL

GOP.000269

Policy number YU2-L9L-426467-021

This endorsement is effective 04/03/2011 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## INTERRUPTION OF SERVICES COVERAGE EXTENSION

This endorsement modifies insurance provided under the following:

> EXTENSIONS OF COVERAGE, Form RM1002
> EXCLUSIONS, Form RM1003

1.  We will pay for physical loss or damage to covered **property**, loss of **business income and extra expense** resulting from an interruption of the electrical, heating, air conditioning, refrigeration, telecommunication, steam, water, sewer or fuel service to a location shown on the Schedule of this endorsement, but only if the interruption of service results:

    A.  From physical damage by a peril **insured against**;

    B.  Away from a location shown on the Schedule of this endorsement;

    C.  To the following, if marked with an "X", that directly supply service to the location shown on the Schedule of this endorsement and are either owned, managed or controlled by a company with a contract to supply these services to that location, or are located within one (1) mile of that location:

        (1) (X) Any electrical generating plant, substation, power switching station, transformer, gas compressor station, telephone switching facility, water or sewer treatment plant or any other plant or facility responsible for providing the services specified in 1. above;

        (2) (X) Transmission and distribution lines, connections or supply pipes which furnish electricity, steam, gas, refrigeration, telecommunication, water or sewer (other than overhead transmission and distribution lines);

        (3) (X) Overhead transmission and distribution lines.

2.  We will not pay for any physical loss or damage to covered **property**, loss of **business income** or extra expense due to any interruption of service from:

    A.  A satellite, regardless of cause; or

    B.  The operation of any breaker, switch, device or system designed to preserve or protect any property or system integrity; or

    C.  Any misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting, cleaning, or the performance of maintenance.

3.  Conditions

    A.  This extension applies only to the Coverages marked with an "X" in **B. Coverages** of the DECLARATIONS, Form RM1000.

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

RM1110 02-11

Page  1  of  3

**CONFIDENTIAL**

GOP.000270

## INTERRUPTION OF SERVICES COVERAGE EXTENSION (Continued)

**B.** This extension, however, does not apply to, and no coverage is provided in conjunction with, Standard Extension of Coverage A. 7. Extended Period of Restoration, EXTENSIONS OF COVERAGE, Form RM1002, with respect to any loss of **business income** covered solely under this endorsement.

**4. Limit of Liability**

We will not pay more than the applicable **limit of liability** shown on the Schedule of this endorsement for any one (1) **occurrence**. This **limit of liability** does not increase and is not in addition to any other applicable **limit of liability.**

**5. Waiting Period**

If an interruption of service waiting period is shown below or on the Schedule of this endorsement, we will only pay for loss of **business income, extra expense** or for **perishable goods** if the interruption exceeds the specified waiting period. Once the waiting period is met coverage will commence at the initial time of the interruption, and will be subject to any deductible shown in 6. below or on the Schedule of this endorsement.

The following interruption of service waiting period(s) apply:

**A.** Equipment Breakdown                             72 Hours

**B.** All Coverages Except Equipment Breakdown       72 Hours

**6. Deductible**

If the interruption of service exceeds the waiting periods in 5., the following deductibles apply to any loss covered under this endorsement unless otherwise shown on the Schedule of this endorsement.

**A.** Equipment Breakdown

Deductible(s) as specified in G. 3. a. and G. 3. b. on the DECLARATIONS, Form RM1000, or on the ADDITIONAL DEDUCTIBLES AND WAITING PERIODS, Form RM1115.

**B.** All Coverages Except Equipment Breakdown

**(1)** We will not pay unless a loss covered under this endorsement exceeds **$25,000**. We will then pay only the amount of loss in excess of this deductible, up to the applicable **limit of liability.**

If a separate deductible is shown below, the foregoing dollar amount deductible does not apply to the loss of **business income** or **extra expense** portion of the loss covered under this endorsement, which will be subject to the following deductible.

**(2)** Unless otherwise shown on the Schedule of this endorsement, we will not pay for loss of **business income** or **extra expense** until an interruption of service exceeds a time period of 72 hours immediately following the loss covered under this endorsement. We will then pay only the amount of loss sustained after this period of time, up to the **limit of liability** specified.

For a time deductible shown as days, each day consists of twenty-four (24) consecutive hours.

When an asterisk (*) follows one (1) or more of the applicable deductible amounts described on the Schedule of this endorsement or any other endorsement to this policy, the amounts shown will be applied separately, and are in addition to any other applicable deductible(s).

**7.** Refer to the last page of this endorsement for the Schedule of location(s) for which interruption of services coverage is provided by this policy.

RM1110 02-11                                                          Page 2 of 3

**CONFIDENTIAL**                                                          GOP.000271

## INTERRUPTION OF SERVICES COVERAGE EXTENSION (Continued)

Schedule

| Location(s), Coverage(s), Additional Deductible(s) or Waiting Periods | Limit of Liability or Deductible(s) |
| --- | --- |
| **A.** Locations<br>All covered locations except as indicated in B., C., and D. below. | $1,000,000 |
| **B.** Coverages | |
| **C.** Additional Deductibles or Waiting Periods | |
| **D.** Other | |
| Overhead Transmission and Distribution Lines. | 72 hour Waiting Period, 72 Hour Time Deductible- $25,000 Minimum* Deductible |

CONFIDENTIAL

GOP.000272

Policy number YU2-L9L-426467-021

This endorsement is effective 04/03/2011 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## PAYROLL EXPENSE LIMITATION OR EXCLUSION

This endorsement modifies insurance provided under the following:

COVERAGES, Form RM1001

1.  We will pay your *payroll expenses* due to a **business income loss** resulting from necessary interruption of your business by a **peril insured against**, up to the number of business days shown on the Schedule of this endorsement.

2.  For the purpose of this endorsement the italicized term *payroll expenses* means the *payroll expense* for all of your employees except:

    **A.** Officers;

    **B.** Executives;

    **C.** Department managers; and

    **D.** Employees under contract whose services must necessarily continue; and

    *Payroll expense* includes:

    **(1)** Payroll, including taxes and charges dependant on the payment of wages;

    **(2)** Employee benefits, if directly related to payroll;

    **(3)** FICA payments you pay;

    **(4)** Union dues you pay; and

    **(5)** Workers compensation premiums.

Schedule

( )  *Payroll expense* excluded.

(X)  Limited *payroll expense*:

Number of business days:  120

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

RM1113 02-11

Page  1  of  1

**CONFIDENTIAL**

Policy number YU2-L9L-426467-021

This endorsement is effective 04/03/2011 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL DEDUCTIBLES AND WAITING PERIODS

This endorsement modifies insurance provided under the following:

DECLARATIONS, Form RM1000

**A.** If **G. 2.** or **G. 3. d.** on Form RM1000 is marked with an (X), the deductibles and waiting periods for the coverages described on the Schedule of this endorsement apply. If not shown on the Schedule of this endorsement the deductibles and waiting periods for all other coverages remain unchanged.

**B.** If a covered loss involves two (2) or more deductibles, we will use no more than the largest of the applicable deductibles unless otherwise provided below.

**C.** When an asterisk (*) follows one (1) or more of the deductible amounts described on the Schedule of this endorsement, the amounts shown will be applied separately, and are in addition to any other applicable deductible(s).

Schedule

Description of Coverage Deductible or Waiting Period

Amount of Deductible and Waiting Period

**Wind associated with a Named Storm** (Deductible)

**A.** All loss or damage to **covered property** caused by or resulting from **wind associated with a Named Storm** will be subject to the deductible obtained by adding up all of the following with respect to the deductible factors/amounts listed in Paragraph C. below:

    **1.** the sum of all applicable percentage deductible factors, calculated as described in Paragraph B. below, subject to any applicable minimums or maximums; and

    **2.** Any applicable flat deductible amounts.

**B.** To determine the amount to be used in Paragraph A. for any percentage deductible factors provided in Paragraph C., multiply the applicable percentage shown by:

    **1.** the total reported values on file with us for the **covered property** at the corresponding location(s) (including sub-locations) where the loss occurred; plus

    **2.** the full annual loss of **business income** value which **you** would have earned for the corresponding location (including sub-locations) where the loss occurred in the twelve (12) month period following the loss had no loss occurred.

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

RM1115 02-11

Page 1 of 2

CONFIDENTIAL

GOP.000274

## ADDITIONAL DEDUCTIBLES AND WAITING PERIODS (continued)

### Schedule

| Description of Coverage Deductible or Waiting Period | Amount of Deductible and Waiting Period |
|---|---|

**C.** The following are the deductible factors/amounts to be used for purposes of calculating the wind associated with a Named Storm deductible. If a location (including its sub locations) falls into two or more of the following categories, the category that more specifically identifies that location will be the only one that applies to that location for purposes of calculating its portion of the wind associated with a Named Storm deductible:

| Categories (by Group(s), Region(s), State(s), County(ies), Location(s)) | Deductible Factors/Amounts |
|---|---|
| First tier wind Counties and Parishes;<br>Second tier wind Counties and Parishes;<br>and Additional First Tier Wind Counties<br>and Independent Cities | 2% subject to $100,000 minimum |
| Additional Second Tier Wind Counties and<br>Independent Cities | $50,000 |
| Florida; Hawaiian Islands; and Puerto Rico | 5% subject to $250,000 minimum |

**D.** The foregoing wind associated with a Named Storm deductible is a single deductible, even if multiple percentages, minimums or flat deductible factors/amounts apply.

Property in Custody of Sales People
Property in Custody of Sales People                           $10,000

RM1115 02-11                                                  Page 2 of 2

**CONFIDENTIAL**                                    GOP.000275

Policy number YU2-L9L-426467-021

This endorsement is effective 04/03/2011 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## STANDARD EXTENSIONS AMENDATORY

This endorsement modifies insurance provided under the following:

EXTENSIONS OF COVERAGE, Form RM1002

The following Standard Extensions of Coverage are amended as shown below when marked with an "X":

Standard Extensions of Coverage

1.  (X) Accounts Receivable

    Our sublimit under A. 1. a. Accounts Receivable is increased from $100,000 to $250,000.

2.  ( ) Arson Reward

    Our sublimit under A. 2. Arson Reward is increased from $25,000 to $Not Applicable.

3.  ( ) Computer Virus and Denial of Access

    Our sublimit under A. 3. Computer Virus and Denial of Access is increased from $25,000 to $Not Applicable.

4.  (X) Debris Removal Expense

    A.  Our sublimit under A. 4. b. Debris Removal Expense is increased from $250,000 to $2,500,000.

    B.  A. 4. c. Debris Removal Expense is deleted and replaced by the following:

        c.  We will pay up to $25,000 for expenses to remove from a covered location, windblown debris of property not covered by this policy.

5.  ( ) Deferred Payments

    Our sublimit under A. 5. a. Deferred Payments is increased from $25,000 to $Not Applicable.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

RM1119 03-08

Page 1 of 2

**CONFIDENTIAL**

**GOP.000276**

**STANDARD EXTENSIONS AMENDATORY (Continued)**

6. (X) Extended Period of Restoration

    A. 7. a. Extended Period of Restoration is amended to 180 days in lieu of sixty (60) days.

7. ( ) Fine Arts

    Our sublimit under A. 9. Fine Arts is increased from $100,000 to $Not Applicable.

8. ( ) Fungus Cleanup Expense

    Our sublimit under A. 10. b. Fungus Cleanup Expense is increased from $250,000 to $Not Applicable.

9. ( ) Installation of Personal Property or Personal Property of Others

    Our sublimit under A. 11. Installation of Personal Property or Personal Property of Others is increased from $250,000 to $Not Applicable.

10. ( ) Lock and Key Replacement

    Our sublimit under A. 12. b. Lock and Key Replacement is increased from $25,000 to $Not Applicable.

11. ( ) Plants, Trees or Shrubs

    Our sublimit under A. 14. Plants, Trees or Shrubs is increased from $100,000 to $Not Applicable.

12. ( ) Pollution Cleanup Expense

    A.  Our annual aggregate limit of liability under A. 15. b. Pollution Cleanup Expense is increased from $25,000 to $Not Applicable.

    B.  Our annual aggregate limit of liability under A. 15. c. Pollution Cleanup Expense is increased from $25,000 to $Not Applicable.

13. ( ) Professional Fees

    Our sublimit under A. 16. a. Professional Fees is increased from $25,000 to $Not Applicable.

14. ( ) Removal

    A. 17. b. (1) Removal is deleted and replaced by the following:

    (1) For up to NA days at each place to which the property has been taken for preservation;

**CONFIDENTIAL**                                  **GOP.000277**

Policy number YU2-L9L-426467-021

This endorsement is effective 04/03/2011 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SPOILAGE OF PERISHABLE GOODS WHILE IN TRANSIT EXTENSION

This endorsement modifies insurance provided under the following:

EXTENSIONS OF COVERAGE, Form RM1002

1. We will pay up to a sublimit of liability of $125,000 in any one (1) occurrence, for spoilage of **perishable goods** while those goods are in **transit**.

2. We will only pay if losses result from **perils insured against**, or mechanical breakdown or malfunction of heating or cooling equipment.

3. We will not pay for:

   **A.** Your actual loss of business **income or extra expense**;

   **B.** Loss or damage caused by mechanical breakdown or malfunction that results from failure to maintain adequate fuel levels for the heating or cooling equipment.

4. This extension of coverage is subject to the policy deductible.

5. The sublimit of liability shown in this endorsement does not increase and is not in addition to any other applicable **limit of liability.**

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

RM1122 03-08

Page 1 of 1

**CONFIDENTIAL**

**GOP.000278**

Policy number YU2-L9L-426467-021

This endorsement is effective 04/03/2011 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EXCLUSION OF CERTIFIED ACT(S) OF TERRORISM

This endorsement modifies insurance provided under the following:

> EXCLUSIONS, Form RM1003
> DEFINITIONS, Form RM1007

1. Definition of *Certified Act(s) of Terrorism*

   For the purpose of this endorsement, the italicized phrase *certified act(s) of terrorism* means one (1) or more acts certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be terrorism pursuant to the federal Terrorism Risk Insurance Act, including all amendments (hereafter "TRIA"). The criteria contained in TRIA for *certified act(s) of terrorism* include the following:

   A. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

   B. The act is a violent act or an act that is dangerous to human life, property or infrastructure, and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2. Exclusion of *Certified Act(s) of Terrorism*

   The following Item is added to A. GROUP A EXCLUSIONS of Form RM1003:

   12. *Certified act(s) of terrorism.*

3. Exception Covering Certain Fire Losses

   If a *certified act of terrorism* results in fire, subject to all applicable policy provisions, we will pay up to the following applicable amount(s) in any one (1) occurrence for loss or damage caused by that fire:

   A. The applicable limit of liability for covered property in any and all States listed on the Schedule of this endorsement, or

   B. A limit of liability of $1,000,000 for covered property in any and all States that are not listed on the Schedule of this endorsement.

   Such coverage for fire applies only to direct loss or damage by fire to covered property. Therefore, for example, the coverage does not apply to insurance provided under loss of business income or extra expense coverage even if marked with an "X" in B. Coverages of the DECLARATIONS, Form RM1000.

Includes copyrighted material of Insurance Service Office, Inc., with its permission.

**CONFIDENTIAL**

GOP.000279

## EXCLUSION OF CERTIFIED ACT(S) OF TERRORISM (Continued)

4.  Cap on Losses From *Certified Act(s) of Terrorism*

    If aggregate insured losses attributable to *certified act(s) of terrorism*:

    **A.**  exceed $100 billion in a program year (January 1 through December 31); and

    **B.**  we have met our deductible under the Act;

    neither we nor the Secretary of the Treasury shall be liable for the payment of any portion of the amount of such losses that exceeds the $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

5.  Application of Other Exclusions

    The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion do not serve to create coverage for any loss which would otherwise be excluded by this policy, such as losses under **GROUP A** exclusions A. 1. and A. 8. on EXCLUSIONS, Form RM1003 attached to this policy.

### Schedule of States

California, Georgia, Hawaii, Illinois, Iowa, Maine, Massachusetts, Missouri, New Jersey, New York, North Carolina, Oregon, Rhode Island, Washington, West Virginia, Wisconsin, and the Virgin Islands

RM1143RI 03-08

**CONFIDENTIAL**

GOP.000280

Policy number YU2-L9L-426467-021

This endorsement is effective 04/03/2011 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LOSS ADJUSTMENT AGREEMENT

This endorsement modifies insurance provided by all of the forms and endorsements forming a part of our Property Policy to which it is attached. Under certain circumstances it may increase or limit our initial payment to you following a loss.

**A.** In the event of damage to property at a location that is covered by both the Property and Equipment Breakdown Coverage Parts or Policies, and there is disagreement between the insurance carriers as to whether the damage:

    **1.** Was caused by an **accident** insured under the Equipment Breakdown Coverage Part or Policy; or

    **2.** Was caused by a **peril insured against** under the Property Coverage Part or Policy; or

    **3.** Is partially covered by either.

**B.** We will pay, after **your** written request, the amount of loss that we accept as definitely covered by **our** Property Coverage Part or Policy, plus one-half (1/2) the amount of loss that is in disagreement. However, the total we will pay will not be more than we would have paid had there been no Equipment Breakdown Coverage Part or Policy in effect at the time of the occurrence.

**C.** This agreement is subject to the following conditions:

    **1.** The total amount of loss shall be first agreed to by you, the Equipment Breakdown insurer(s), and us.

    **2.** Any payment made under the terms of this endorsement, for the amount of loss in disagreement, is limited to the smallest amount payable under either the Equipment Breakdown or Property Coverage Parts or Policies.

    **3.** The Equipment Breakdown insurer(s) will pay you the amount of loss they accept as definitely covered by the Equipment Breakdown Coverage Parts or Policies, plus one-half (1/2) the amount of loss that is in disagreement. However, the total they will pay will not be more than they would have paid had there been no Property Coverage Part or Policy in effect at the time of the occurrence.

    **4.** After payment of the loss under the terms of this endorsement, the Equipment Breakdown insurer(s) and we agree to submit **our** differences to arbitration within ninety (90) days of **our** payments.

    **5.** You agree to cooperate with any arbitration procedures. There will be three (3) arbitrators. One (1) will be appointed by us, one (1) by the Equipment Breakdown insurer(s) and the third by the mutual consent of the other two (2) arbitrators. The arbitrators' decision shall be binding on the insurers. Judgement on any award can be entered in any court that has jurisdiction.

    **6.** The provisions of this endorsement will not apply unless the Equipment Breakdown Coverage Part or Policy is similarly endorsed.

    **7.** Acceptance by you of sums paid under the terms of this endorsement does not alter, waive or surrender any of your legal rights against us.

Copyright 2004, Liberty Mutual Group of Companies - all rights reserved.

RM1253 01-04

Page 1 of 1

CONFIDENTIAL

GOP.000281

Policy number YU2-L9L-426467-021

This endorsement is effective 04/03/2011 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ADDITIONAL FIRST TIER WIND COUNTIES AND INDEPENDENT CITIES (THE STATES OF VIRGINIA THROUGH AND INCLUDING MAINE)

This endorsement modifies insurance provided under the following:

DEFINITIONS, Form RM1007

It is agreed the Counties and Independent Cities in the following States are added to definition N, **First tier wind Counties and Parishes** on Form RM1007:

Fairfield, Middlesex, New Haven and New London Counties in the State of Connecticut;

Sussex County in the State of Delaware;

Cumberland, Hancock, Knox, Lincoln, Penobscot, Sagadahoc, Waldo, Washington and York Counties in the State of Maine;

Somerset and Worcester Counties in the State of Maryland;

Barnstable, Bristol, Dukes, Essex, Nantucket, Norfolk, Plymouth and Suffolk Counties in the State of Massachusetts;

Rockingham County in the State of New Hampshire;

Atlantic, Burlington, Cape May, Cumberland, Essex, Hudson, Middlesex, Monmouth, Ocean and Union Counties in the State of New Jersey;

Bronx, Kings, Nassau, New York, Queens, Richmond and Suffolk Counties in the State of New York;

Bristol, Newport and Washington Counties in the State of Rhode Island; and

Accomack, Gloucester, Hampton #, Lancaster, Mathews, Middlesex, Newport News #, Norfolk #, Northampton, Northumberland, Poquoson #, Portsmouth #, Virginia Beach #, Williamsburg # and York Counties and Independent Cities in the State of Virginia (# = Independent City).

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

RM1432 09-08

**CONFIDENTIAL**

Policy number YU2-L9L-426467-021

This endorsement is effective 04/03/2011 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL SECOND TIER WIND COUNTIES AND INDEPENDENT CITIES
## (THE STATES OF VIRGINIA THROUGH AND INCLUDING MAINE)

This endorsement modifies insurance provided under the following:

DEFINITIONS, Form RM1007

It is agreed the Counties and Independent Cities in the following States are added to definition L.L. **Second tier wind Counties and Parishes** on Form RM1007:

Hartford, Litchfield, Tolland and Windham Counties in the State of Connecticut;

Kent and New Castle Counties in the State of Delaware;

Androscoggin, Aroostook, Kennebec and Oxford Counties in the State of Maine;

Anne Arundel, Baltimore, Baltimore City, Calvert, Caroline, Cecil, Charles, Dorchester, Harford, Kent, Queen Anne's, St. Mary's, Talbot and Wicomico Counties in the State of Maryland;

Middlesex and Worcester Counties in the State of Massachusetts;

Carroll, Hillsborough, Merrimack and Stafford Counties in the State of New Hampshire;

Bergen, Camden, Gloucester, Mercer, Morris, Passaic, Salem and Somerset Counties in the State of New Jersey;

Dutchess, Putnam, Rockland and Westchester Counties in the State of New York;

Bucks, Delaware and Philadelphia Counties in the State of Pennsylvania;

Kent and Providence Counties in the State of Rhode Island; and

Caroline, Charles City, Chesapeake #, Essex, Isle of Wight, James City, King and Queen, King George, King William, New Kent, Prince George, Richmond, Suffolk #, Surry and Westmoreland Counties and Independent Cities in the State of Virginia (# = Independent City).

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

RM1434 09-08

CONFIDENTIAL

GOP.000283

Policy number YU2-L9L-426467-021

This endorsement is effective 04/03/2011 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXTRA EXPENSE – TRANSIT AMENDATORY

This endorsement modifies insurance provided under the following:

COVERAGES, Form RM1001

1. Item **D. 3. g. (2)** is deleted from Form RM1001.

2. The following extension of coverage is added to this policy:

   **Extra Expense - Transit**

   **We will pay up to sublimit of liability of $50,000 in any one (1) occurrence for the actual extra expense you incur for loss resulting from damage caused by a peril insured against to the following:**

   **Property in transit.**

3. The sublimit of liability payable under this endorsement does not increase and is not in addition to any other applicable limit of liability.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

RM1524 09-08                                                                                          Page 1 of 1

**CONFIDENTIAL**

GOP.000284

Policy number YU2-L9L-426467-021

This endorsement is effective 04/03/2011 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## LIVESTOCK COVERAGE EXTENSION

This endorsement modifies insurance provided under the following:

> EXTENSIONS OF COVERAGE, Form RM1002
> PROPERTY NOT COVERED, Form RM1004

1. Item B, on Form RM1004 is replaced by the following:

    B.  Animals, excluding livestock while awaiting processing within one-thousand (1,000) feet of the processing building at a **covered location;**

2. The following extension of coverage is added to this policy:

    Livestock Awaiting Processing

    a.  We will pay for loss caused by a **specified peril** to livestock while awaiting processing within one-thousand (1,000) feet of the processing building at a **covered location.**

    b.  The most we will pay in any one (1) occurrence is a **limit of liability** of $1,200,000.

    c.  We will not pay however unless a covered loss exceeds $25,000 in any one (1) occurrence.  We will then pay for the excess of that covered loss, up to the **limit of liability** shown on this endorsement.

3. The **limit of liability** payable under this endorsement does not increase and is not in addition to any other applicable **limit of liability.**

Copyright 2011, Liberty Mutual Group of Companies - all rights reserved.

RM1618 02-11

**CONFIDENTIAL**

GOP.000285

Policy number YU2-L9L-426467-021

This endorsement is effective 04/03/2011 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## CALIFORNIA CHANGES

This endorsement applies only to covered property located in California, and modifies insurance provided under the following:

### CONDITIONS, Form RM1006

1. Item B. Appraisal is replaced with the following:

   B. Appraisal

   1. If you fail to agree with us on the value of the covered property or the amount of a loss, either party may demand that the disputed amount be submitted for appraisal. A demand for appraisal will be made in writing within sixty (60) days after our receipt of proof of loss. Each party will then choose a competent and disinterested appraiser. Each party will notify the other of the identity of its appraiser within twenty (20) days of the written demand for appraisal.

   2. The two (2) appraisers will choose a competent and disinterested umpire. If the appraisers are unable to agree on an umpire within fifteen (15) days, you or we may petition a judge of a court of record in the state where the covered loss happened, to select an umpire.

   3. The appraisers will then set the value of the covered property and the amount of the loss or damage. If the appraisers submit a written report of an agreement to you and us, the amount they agree on will be the amount of our payment for the loss or damage. If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two (2) of these three (3) will set the amount of loss or damage.

   4. Each appraiser will be paid by the party that selects him or her. Other expenses of the appraisal and compensation of the umpire will be paid equally by you and us.

2. Item I. Concealment, Misrepresentation or Fraud is replaced with the following:

   I. Concealment, Misrepresentation or Fraud

   1. If a covered loss is caused by or results from the peril of fire, we will not cover the resulting loss or damage if, with the actual intent to deceive, you commit fraud or intentionally conceal or misrepresent any material fact or circumstance, whether before or after the loss, concerning:

      a. This policy;

      b. The covered property;

      c. Your interest in the covered property; or

      d. A claim under this policy.

Copyright 2009, Liberty Mutual Group of Companies - all rights reserved.

RM1804 03-09                                                                                              Page  1  of  2

**CONFIDENTIAL**                                                                        **GOP.000286**

## CALIFORNIA CHANGES (Continued)

2. If a covered loss is caused by or results from a **peril insured against** other than the peril of fire, this policy is immediately void if, with the actual intent to deceive, **you**, **your** representative or any insured commit fraud or intentionally conceal or misrepresent any material fact or circumstance, whether before or after the loss, concerning:

   a.   This policy;

   b.   The covered property;

   c.   **Your** interest in the covered property; or

   d.   A claim under this policy.

RM1804 03-09

Page 2 of 2

**CONFIDENTIAL**

GOP.000287

Policy number YU2-L9L-426467-021

This endorsement is effective 04/03/2011 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### NEBRASKA CHANGES

This endorsement applies only to covered property located in Nebraska, and modifies insurance provided under the following:

> VALUATIONS, Form RM1005
> CONDITIONS, Form RM1006

1. The following is added to Form RM1005:

   If real property has a covered loss and is wholly destroyed by fire, tornado, windstorm, lightning or explosion, and there is no criminal fault on the part of you or your assignee, the limit of liability on such real property shall be taken conclusively to be the true value of the covered property and the true amount of loss and measure of damages.

2. Form RM1006, Item I, Concealment, Misrepresentation or Fraud is replaced with the following:

   I.  Misrepresentation or Breach of Warranty or Condition

        1.  No oral or written misrepresentation or warranty made in the negotiation of this policy by you or on your behalf will void this policy unless:

            a.  It is made with the intent to deceive;

            b.  We rely on it to our injury.

        2.  The breach of warranty or condition will void the policy if such breach exists at the time of the loss and contributes to the loss.

3. Form RM1006, Item 1. of B. Appraisal, is replaced with the following:

   B.  Appraisal

        1.  If you fail to agree with us on the amount of a loss, either party may require that the amount be submitted for appraisal. Requests for appraisal will be made in writing. Both parties must agree to the appraisal. Each party will then choose a competent independent appraiser. Each party will notify the other of the identity of its appraiser within sixty (60) days of the written request for appraisal.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

RM1826 03-08

Page 1 of 1

**CONFIDENTIAL**

Policy number YU2-L9L-426467-021

This endorsement is effective 04/03/2011 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NEBRASKA CHANGES - CANCELLATION

This endorsement modifies insurance provided under the following:

CONDITIONS, Form RM1006

Item 3. of F. Cancellation is replaced with the following:

3. If this policy has been in effect for sixty (60) days or more, or is a renewal of a policy we issued, we may cancel this policy by giving you written notice of cancellation at least:

   a. Ten (10) days before the date of cancellation if we cancel for nonpayment of premium;

   b. Sixty (60) days before the date of cancellation if we cancel for one (1) or more of the following reasons:

      (1) Discovery of fraud or material misrepresentation by you in obtaining this policy or in pursuing a claim under this policy;

      (2) You have violated any of the terms or conditions of this policy;

      (3) The risk originally accepted has substantially increased;

      (4) Certification to the Director of Insurance of loss or substantial decrease of our reinsurance covering the insurance provided by this policy; or,

      (5) A determination by the Director of Insurance that continuation of the policy would violate or place us in violation of the law.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

RM1926 03-08

CONFIDENTIAL

GOP.000289

Policy number YU2-L9L-426467-021

## DISCLOSURE - TERRORISM RISK INSURANCE ACT

**THIS FORM IS MADE PART OF YOUR POLICY PURSUANT TO THE TERRORISM RISK INSURANCE ACT.**

In accordance with the Terrorism Risk Insurance Act, including all amendments ("TRIA" or the "Act"), we are required to provide you with a notice of the portion of your premium attributable to coverage for "certified acts of terrorism," the federal share of payment of losses from such acts, and the limitation or "cap" on our liability under the Act.

**Disclosure of Premium**

The Company has made available coverage for "certified acts of terrorism" as defined in the Act. If purchased, the portion of your premium attributable to coverage for "certified acts of terrorism" is shown on the DECLARATIONS, or elsewhere by endorsement in your policy.

**Federal Participation in Payment of Terrorism Losses**

If an individual insurer's losses exceed a deductible amount specified in the Act, the federal government will reimburse the insurer for 85% of losses paid in excess of the deductible, provided that aggregate industry losses from a "certified act of terrorism" exceed $100 million.

**Cap On Insurer Participation in Payment of Terrorism Losses**

If aggregate insured losses attributable to "certified acts of terrorism" exceed $100 billion in a calendar year and we have met our deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. Nor shall Treasury make any payment for any portion of the amount of such losses that exceeds $100 billion. In such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**CONFIDENTIAL**                                                                          GOP.000290

Endorsement number 1 for policy number YU2-L9L-426467-021

Named Insured GREATER OMAHA PACKING CO INC

This endorsement is effective 06/01/2011 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### Change Endorsement

DESCRIPTION OF CHANGE                                                                                 PREMIUM

ADDITIONAL TYPES OF PROPERTY NOT COVERED AMENDATORY, Form
RM1728 09-04 is added per the attached.

No change in premium.

PREMIUM (EXCLUDING TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM):
TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM:
OTHER CHARGES:

TOTAL AMOUNT PAYABLE FOR ENDORSEMENT:

RM9998 01-04                                                                                 Page 1 of 1

**CONFIDENTIAL**

GOP.000291

Endorsement number 1 for policy number YU2-L9L-426467-021

This endorsement is effective 06/01/2011 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL TYPES OF PROPERTY NOT COVERED AMENDATORY

This endorsement modifies insurance provided under the following:

PROPERTY NOT COVERED, Form RM1004

We do not cover loss to the additional types of property described in the Schedule of this endorsement:

Schedule

Item No.        Description of Property Not Covered
                Transit coverage by or on behalf of Greater Omaha Packing Co Inc including Trex Corporation that originates
                within the territory of Canada and that terminates in the territory of Canada. This does not impact any current
                transit extension that originates in the U.S. and terminates in the territory of Canada, or originates in Canada and
                terminates in the U.S.

Copyright 2004, Liberty Mutual Group of Companies - all rights reserved.

RM1728 09-04                                                                                          Page 1 of 1

**CONFIDENTIAL**



GREATER OMAHA PACKING CO INC
PO BOX 7566
OMAHA NE 68107

Liberty Mutual is the marketing name for the property and casualty insurance operations of Liberty Mutual Group Inc. Products may be written in the following stock insurance company subsidiaries of Liberty Mutual Group Inc.:
    Liberty Mutual Insurance Company
    Liberty Mutual Fire Insurance Company
    Liberty Insurance Corporation
    LM Insurance Corporation
    The First Liberty Insurance Corporation
    Liberty Insurance Company of America
    Liberty Surplus Insurance Corporation
    Liberty County Mutual Insurance Company
    Wausau Business Insurance Company
    Wausau General Insurance Company
    Wausau Underwriters Insurance Company
    Employers Insurance Company of Wausau

Not all products and coverages are available in all companies or jurisdictions.

**GPO 4949 R1**     Copyright 2009 Liberty Mutual Group of Companies.  All rights reserved.

**CONFIDENTIAL**

GOP.000293

## PROCESSING AGREEMENT

This Processing Agreement, dated as of April 2 7, 2006 (this "**Agreement**"), is made and entered into by and between Meyer Natural Foods LLC, a Delaware limited liability company (herein "**Meyer**"), and Greater Omaha Packing, a _Nebraska_ corporation (herein "**GOP**"), with reference to the following facts:

## RECITALS

A.    GOP is engaged in the slaughter, fabrication, and processing of beef cattle at its facility in Omaha, Nebraska (the "**Omaha Facility**").

B.    Meyer is engaged in the marketing, sale and distribution of beef and beef products produced in accordance with Meyer's proprietary "all-natural" protocols.

C.    Meyer and GOP desire that GOP provide to Meyer certain slaughter, fabrication, and standard handling requirements in accordance with the terms and provisions set forth in this Agreement.

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual promises, covenants and agreements contained herein, and other good and valuable consideration, Meyer and GOP agree as follows:

SECTION 1.   <u>TERM</u>.

(a)    The initial term of this Agreement (the "**Initial Term**" and, including any Extension Term, the "**Term**") shall be for a five-year period beginning on the date hereof and expiring on the fifth anniversary of such date, unless this Agreement is sooner terminated as provided in Section 18. At its option, Meyer may extend the Initial Term for up to two consecutive one-year periods (each, an "**Extension Term**") upon notice to GOP at least 30 days prior to the date the Term otherwise would expire. At the expiration of the Term, this Agreement shall be terminated automatically without any further action by the parties, unless the parties otherwise agree.

SECTION 2.   <u>PROCESSING OF PRODUCTS</u>.

(a)    For the duration of the Term, Meyer shall engage and hire GOP to provide, and GOP shall provide to Meyer, on the terms set forth herein slaughter, fabrication, and standard handling services (the "**Processing Services**").

SECTION 3.   <u>MINIMUM REQUIREMENTS</u>.

(a)    During the Term, Meyer shall require from GOP, and GOP shall provide to Meyer, the Processing Services for not less than 500 nor more than 2,400 head of cattle per week. In the event Meyer's requirements exceed 2,400 head of cattle in a given week, GOP shall use commercially reasonable efforts to accommodate all such additional requirements on the terms of this Agreement. All Meyer cattle shall be slaughtered one day each week and

00673/0063 137457.1



fabricated and processed another day during such week as determined by agreement of the parties in good faith from time to time. For each day's production, GOP will provide Meyer with a yield sheet reflecting the cuts obtained from the carcasses, any product retained, and weights, box counts, and other relevant information sufficient to enable Meyer to calculate processing yields and costs.

(b)     Meyer shall furnish GOP at least seven days' advance notice of the number of head of cattle that Meyer expects to require GOP to process during each week during the Term. Meyer also shall furnish GOP with a final make sheet not later than 2:00 P.M., Omaha, Nebraska time, on the day prior to each fabrication day.

SECTION 4.   PROCESSING FACILITY.

(a)     The Processing Services shall be provided exclusively at the Omaha Facility.

SECTION 5.   FEES AND COSTS.

(a)     Meyer shall pay GOP a processing fee for all of the Processing Services as shown on the attached **Exhibit A** (the "**Processing Fee**"); *provided, however,* that the Processing Fee shall be waived by GOP for all carcasses sold back to GOP as permitted in Section 6(a). The Processing Fee shall include all costs and charges for all of the Processing Services, including packaging and packing materials, labeling and labeling materials, grade change fees, warehousing, loading, and other standard handling, as well as for the provision of yield sheets and other information called for in Section 3(a), above. The Processing Fee is subject to the provisions of Section 6(b) and the other provisions of this Agreement.

(b)     Meyer and GOP shall conduct a good-faith review of the Processing Fee on an annual basis in June of each year during the Term beginning June 2007 and agree to an adjustment to the Processing Fee to take affect following each anniversary of the date of this Agreement to reflect changes in the actual costs to GOP of providing the Processing Services due to inflation (including, without limitation, changes in wage and benefit costs of GOP) and operating cost increases (including, without limitation, changes in costs of food safety and employee safety programs). The maximum annual increase in the Processing Fee shall not exceed 3.5% of the per-head Processing Fee in effect for the immediately preceding year. The Processing Fee also shall be subject to reduction to reflect actual cost reductions and efficiency improvements achieved by GOP.

(c)     Upon reasonable notice by Meyer, GOP will use commercially reasonable efforts to accommodate any fabrication or processing requirements of Meyer other than the Processing Services.

(d)     Meyer shall be responsible, at its sole cost and expense, for shipping and shipping charges associated with transporting its cattle to the Omaha Facility and for transporting its finished products from the Omaha Facility.

- 2 -

SECTION 6.  SELL-BACK OPTION.

(a)    Upon notice to GOP at any time or from time to time, Meyer shall have the option to sell to GOP, and GOP shall be required to purchase from Meyer, carcasses and other products and by-products of the Processing Services as follows:

(i)    carcasses: the United States Department of Agriculture ("USDA") choice or select cutout value for the week immediately preceding the sell-back, less $0.07 per pound and less all GOP standard discounts for outlying carcasses, which GOP shall furnish quarterly to Meyer;

(ii)    muscle meats: the USDA weighted-average sales price for the week immediately preceding the week of sell-back; and

(iii)    trim: the USDA weighted-average sales price for the week immediately preceding the week of sell-back.

(b)    GOP shall retain all fat and bones generated from the processing of Meyer cattle hereunder, except that GOP shall furnish to Meyer, at no cost to Meyer, all femur bones, pipe bones and xf trim, and except that Meyer shall be entitled to purchase from GOP all edible fat based upon a price to be agreed upon by Meyer and GOP based on the prevailing edible tallow market index.

SECTION 7.  DROP CREDIT.

(a)    For each animal slaughtered by GOP for Meyer (including animals whose carcasses are sold back to GOP under Section 6(a), GOP shall retain the offal and by-product items and pay to Meyer, or credit Meyer against the Processing Fees otherwise owing to GOP, an amount determined by the weekly USDA composite value for the prior week.  Meyer, in its discretion, shall be entitled to purchase from GOP selected offal items at the USDA weighted-average value for such items for the week prior to slaughter.

SECTION 8.  STORAGE.

(a)    Meyer shall be responsible, at its sole cost and expense, for storing, or arranging for storing, all finished products at third-party cold storage facilities designed by Meyer in its sole discretion.  GOP shall use commercially reasonable efforts to source load Meyer finished products for shipment to Meyer customers.

SECTION 9.  PAYMENT TERMS.

(a)    GOP will invoice Meyer on a weekly basis for all Processing Fees. Subject to Section 10, payment shall be due from Meyer within seven (7) days after receipt of such invoice.

- 3 -

SECTION 10. INSPECTION/TESTING: NON-CONFORMING PRODUCTS.

(a)     Meyer or its customers will have the right to inspect the furnished products upon delivery by GOP and prior to payment or acceptance to verify that the finished products conform to Meyer's specifications and have not been damaged or destroyed in transit. Meyer shall notify GOP of its non-acceptance of any of the products within twenty (20) days of delivery. If Meyer fails to so notify GOP, it will be deemed to have accepted such products as of the delivery date; *provided, however,* that Meyer's acceptance of the products will not relieve GOP of any of its warranty obligations under this Agreement. All products failing to meet the warranties and specifications contained in this Agreement, or shipped contrary to provisions of the related purchase order, may be rejected by Meyer for full credit and returned or held at GOP's expense and risk. Meyer shall charge GOP its out-of-pocket expenses of storing and reshipping any products properly rejected by Meyer under this Agreement. GOP will not replace any such rejected products without written authorization from Meyer.

SECTION 11. LABELING AND PACKAGING.

(a)     GOP agrees to use such labeling and packaging, including without limitation, all labeling and packaging required by applicable law, on all products processed for Meyer under this Agreement in accordance with the instructions and guidelines of Meyer specified by Meyer in its purchase orders or otherwise. Meyer hereby grants to GOP the nonexclusive and nontransferable right to use Meyer's name, trade name, logo, design, and trade dress for purposes of rendering the Processing Services pursuant to this Agreement. Except for such license, nothing in this Agreement shall be deemed to confer upon GOP any right, title or interest in any intellectual property of Meyer, all of which shall remain the sole and exclusive property of Meyer. Likewise, nothing in this Agreement shall be deemed to confer upon Meyer any right, title or interest in any intellectual property rights, including inventions, patent applications, and patents, of GOP, all of which shall remain the sole and exclusive property of GOP.

SECTION 12. SPECIFICATIONS AND INSPECTIONS.

(a)     GOP's services hereunder shall conform to all of the following specifications and standards:

(i)     All Meyer products shall be processed according to quality and production standards consistent with Meyer's current practices. GOP shall maintain a quality control system reasonably satisfactory to Meyer covering all products processed hereunder, and shall maintain and provide to Meyer, at Meyer's request, accurate and complete records for such quality control system. Such system shall comply with all applicable requirements of the USDA. Without limiting the generality of the foregoing, GOP will follow all Meyer's protocols with respect to product safety, recalls, e-coli testing, temperature controls and other matters, and will meet or exceed Meyer's current capabilities for tracking products for potential recalls.

(ii)     GOP agrees to maintain and operate the Covered Facilities in a commercially reasonable manner according to industry best practices, and to keep such

- 4 -

facilities in good repair and in compliance with all applicable standards of operation and good manufacturing practices of the USDA.

        (iii)    At all times during the Term, Meyer shall have the right through its employees and representatives to have reasonable access during normal business hours to the Covered Facilities for the purposes of inspecting and observing the Processing Services. GOP will also provide reasonable access and support for periodic visits to the Covered Facilities by Meyer's customers and other third parties doing business with Meyer.

### SECTION 13. CERTAIN COVENANTS.

        (a)    GOP covenants and agrees that during the Term, it shall (i) obtain and maintain all permits and licenses necessary for the valid performance of the Processing Services provided to Meyer hereunder, and the Covered Facilities and its processing operations shall be operated in compliance with all applicable codes, laws, statutes, regulations and ordinances under federal, state or local governments, including without limitation, all requirements of the USDA and the United States Food and Drug Administration, and all environmental, health or safety laws. GOP will promptly notify Meyer of any notices or proceedings arising out of any non-conformity or non-compliance with respect to any matters addressed herein and GOP will promptly cure or have dismissed with prejudice any such actions or proceedings to Meyer's reasonable satisfaction, (ii) cooperate in good faith with Meyer in any investigation or health or other inspection relating to the plant facilities or the products processed herein for Meyer, and (iii) process, label and package the products herein in accordance with the requirements as specified by Meyer from time to time during the Term.

        (b)    GOP and Meyer each covenants and agrees that it shall not, without the prior written consent of the other, directly or indirectly solicit any of the other's "natural" customers or sell or distribute to such customers natural beef products as such.

### SECTION 14. FORCE MAJEURE.

        (a)    Neither GOP nor Meyer shall be liable for, or deemed to be in default hereunder or subject to any remedies of the other party as a result of delays or performance failures due to fire or other acts of God, strikes or other work stoppages, riots or similar causes beyond such party's reasonable control and without such party's fault or negligence; *provided, however*, that if GOP knows or has reason to believe that, because of the foregoing causes, it will be unable to perform the Processing Services hereunder at the Omaha Facility, or if deliveries of processed products will not be made as scheduled, it shall promptly so notify Meyer.

### SECTION 15. WARRANTIES.

        (a)    GOP represents and warrants to Meyer as follows:

        (i)    GOP is a duly formed corporation, validly existing and in good standing under the laws of the State of _Nebraska_ ;

(ii)     The execution, delivery and performance by GOP of this Agreement are within GOP's corporate powers, have been duly authorized by all necessary corporate action, and do not contravene GOP's charter or bylaws or any law or contractual restriction binding on or affecting GOP;

(iii)    There is no pending or threatened litigation challenging GOP's authority to enter into and perform under this Agreement or seeking damages in connection therewith;

(iv)     Each and every processed product produced hereunder for Meyer and related packaging: (A) will not be adulterated or misbranded within the meaning of any applicable federal, state or local law, or any rules and regulations promulgated thereunder; (B) will conform to the quality, production standards and other specifications of Meyer; (C) will comply with all applicable federal, state and local laws, and the rules and regulations promulgated thereunder; (D) will be free and clear of all liens, security interests, claims and encumbrances; (E) will be fit for their intended use and free of any defects created or caused by the negligence or willful misconduct of GOP; and (F) will be properly stored, handled and transported; and

(v)      The Processing Services rendered hereunder will not infringe any patent, copyright, trade secret or other proprietary right or process of any person.

(b)     Meyer represents and warrants to GOP as follows:

(i)      Meyer is a limited liability company, duly formed, validly existing and in good standing under the laws of the State of Delaware;

(ii)     The execution, delivery and performance by Meyer of this Agreement are within Meyer's company powers, have been duly authorized by all necessary company action, and do not contravene Meyer's articles of organization or operating agreement or any law or contractual restricting binding on or affecting Meyer; and

(iii)    There is no pending or threatened litigation challenging Meyer's authority to enter into and perform under this Agreement or seeking damages in connection herewith.

SECTION 16. INDEMNITY.

(a)     GOP agrees to indemnify, defend and hold harmless Meyer and its customers, shareholders, members, officers, directors, employees, agents and affiliates from any claim, demand, loss, damage, liability, cost or expense, directly or indirectly arising out of, or in connection with, or resulting from GOP's breach of any of its representations, warranties and obligations under this Agreement, or the willful or negligent acts or omissions of GOP, or any of its employees, agents, contractors, subcontractors or vendors in rendering the Processing Services hereunder.

(b)     Meyer agrees to indemnify, defend and hold harmless GOP and its customers, shareholders, members, officers, directors, employees, agents and affiliates from any

- 6 -

claim, demand, loss, damage, liability, cost or expense, directly or indirectly arising out of, or in connection with, or resulting from Meyer's breach of any of its representations, warranties and obligations under this Agreement, or the willful or negligent acts or omissions of Meyer, or any of its employees, agents, contractors, subcontractors or vendors in connection herewith.

SECTION 17. TERMINATION OF AGREEMENT.

(a)   Notwithstanding any contrary provision of this Agreement, in addition to any other rights and remedies available to any party in the circumstances, this Agreement may be terminated prior to the expiration of the Term as follows:

(i)   At the option of Meyer, upon the filing of a voluntary bankruptcy or insolvency petition by GOP or an involuntary bankruptcy or insolvency petition against GOP which is not vacated within 30 days from the date of filing, or the entry of an order for relief in any bankruptcy proceeding in which GOP is a defendant; the appointment of a receiver or trustee for GOP; the execution of an assignment for the benefit of creditors of GOP or the execution of a composition with creditors or any agreement of like import by GOP; or

(ii)   At the option of GOP, upon the filing of a voluntary bankruptcy or insolvency petition by Meyer or an involuntary bankruptcy or insolvency petition against Meyer which is not vacated within 30 days from the date of filing, or the entry of an order for relief in any bankruptcy proceeding in which Meyer is a defendant; the appointment of a receiver or trustee for Meyer; the execution of an assignment for the benefit of creditors of Meyer or the execution of a composition with creditors or any agreement of like import by Meyer; or

(iii)   At the option of GOP, in the event that Meyer is in material default in the performance of any of the terms or conditions of this Agreement (including, but not limited to payment obligations), provided that such default or breach is not cured within 30 days after written notice to Meyer by GOP of such default or breach; or

(iv)   At the option of Meyer, in the event that GOP is in material default in the performance of any of the terms or conditions of this Agreement, or GOP shall breach any of its representations or warranties set forth in this Agreement in any material respect, provided that such default or breach is not cured within 30 days after written notice to GOP by Meyer of such default or breach; or

(v)   At the option of GOP or Meyer, as the case may be, at any time following a breach by the other of the provisions of Section 13(b); or

(vi)   At the option of Meyer, during any Extension Term, upon 60 days' advance notice to GOP.

(b)   If this Agreement is terminated pursuant to clause (iii) or clause (vi), above, Meyer agrees that it will purchase from GOP at GOP's net out-of-pocket cost, or reimburse GOP its net out-of-pocket cost, for all packaging materials purchased by GOP for Meyer products and which have been rendered unusable because of such termination.

-7-

(c)     No termination of this Agreement shall affect the liability of any party for any breach of this Agreement.

SECTION 18. INSURANCE.

(a)     GOP shall at all times during the Term maintain property insurance on the value of all Meyer property in its possession from time to time and a comprehensive general liability insurance policy, including liability coverage, contractual liability coverage and product liability coverage insuring against any and all liabilities under this Agreement, in minimum amounts of $30,000,000 per occurrence and in the aggregate for damage, injury and/or death to individual persons and $3,000,000 per occurrence and in aggregate for damage for property and/or injury to property, with the coverages, amounts and deductible levels of such policies to be consistent with industry standards and acceptable to Meyer. Such policies shall name Meyer as additional insured and loss payee, and GOP shall provide Meyer with certificates of insurance evidencing these insurance coverages and providing for 30 days' advance written notice to Meyer of any material change or termination of such coverages.

SECTION 19. REMEDIES UPON DEFAULT.

(a)     Termination of this Agreement by either party shall not limit or otherwise affect the remedies of the nondefaulting or nonbreaching party against the defaulting or breaching party, and the indemnification provisions contained in Section 17 shall survive any such termination and the expiration of the Agreement. In the event that either party is in material default under any of the terms or conditions of this Agreement, or has materially breached any of its representations or warranties in this Agreement, the nondefaulting or nonbreaching party shall be entitled to pursue, in addition to any remedies specifically provided herein, all further remedies then available under the applicable state Uniform Commercial Code or otherwise available at law or in equity.

SECTION 20. PROPRIETARY INFORMATION AND NON-SOLICITATION.

(a)     Meyer and GOP acknowledge that the transactions described herein are of a confidential nature, and neither the transactions nor any information obtained as a result of this Agreement or the underlying transactions shall be disclosed to anyone except as required by law. Unless and until such time as Meyer and GOP should make a mutually agreeable public announcement regarding the transactions, neither Meyer nor GOP shall make any public disclosure of the specific terms of this Agreement without the prior written consent of the other party hereto, except as required by law. In connection with the negotiation of this Agreement, the preparation for the consummation of the transactions contemplated hereby, and the performance of the obligations hereunder, Meyer and GOP acknowledge that they have had and will continue to have access to confidential information relating to the other party. Meyer and GOP each shall treat such information as confidential, preserve the confidentiality thereof as required by applicable law and not use, duplicate or disclose such information in connection with the transactions and activities contemplated hereby, except to any approved representatives of either party. Each party shall be responsible for any breach of this Agreement by its representatives. In the event of the termination of this Agreement for any reason whatsoever, Meyer and GOP shall return to the other all documents, work papers and other material

- 8 -

(including all copies thereof) obtained in connection with the transactions contemplated hereby, will use all reasonable efforts, including instructing its employees and others who have had access to such information, unless such information is now, or is hereafter disclosed, through no act or omission of Meyer or GOP, in any manner making it available to the general public, and agrees not to use any such information disclosed or learned.

(b)     As a material inducement to Meyer to enter into this Agreement, each party agrees that, for the duration of the Term, it shall not, directly or indirectly, as agent, consultant, stockholder, partner, joint venturer or in any other capacity, contact or solicit any of the natural customers of the other or interfere with or disrupt or attempt to disrupt the business relationship with such customers or hire or solicit for hire any of the employees, agents or consultants of the other or any of its affiliates to leave the employ of such party or any of its affiliates.     The parties agree that the covenants set forth hereinabove are reasonable and necessary for the realization of the benefits bargained for in this Agreement and the transactions contemplated hereby.

(c)     In the event of a breach or threatened breach of the obligations of either party pursuant to the provisions of this Section 21, the breaching party agrees that in addition to any other legal rights or remedies that the other party may have, the other party shall be entitled to injunctive and/or other equitable relief to prevent or remedy such breach or threatened breach.

SECTION 21. MISCELLANEOUS.

(a)     This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective permitted successors and assigns; *provided, however,* that neither this Agreement nor the rights or obligations of GOP hereunder shall be assigned, whether voluntarily or by operation of law, or delegated by GOP without the prior written consent of Meyer, which consent may be granted or withheld in its discretion.

(b)     Any notice or other communication provided for herein or given hereunder to a party hereto shall be in writing and shall be (i) mailed by first class registered or certified mail, postage prepaid, (ii) delivered by a nationally recognized overnight courier service, or (iii) transmitted by confirmed facsimile or other confirmed electronic transmission, addressed as follows:

If to Meyer:

Meyer Natural Foods LLC
5285 McWhinney Blvd., Suite 130
Loveland, CO 80538
Attention: Michael O'Neill
Facsimile: 970-292-5567

-9-

If to GOP:

Greater Omaha Packing
3001 "L" Street
Omaha, NE 68107
Attention: Angelo Fili
Facsimile: (402) 731 8020

or to such other address with respect to a party as such party shall notify the other party in writing as above provided.

(c)     This Agreement (including any exhibits attached hereto) represents the entire agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties.   Any amendment of this Agreement shall be in writing, signed by both parties.

(d)     The section and paragraph headings used in this Agreement are included for purposes of convenience only and shall not affect the construction or interpretation of any of its provisions.

(e)     No waiver by either party of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provisions hereof (whether or not similar), nor shall such waiver constitute a continuing waiver unless otherwise expressly provided.

(f)     In the event that any provision hereof is found by a court of competent jurisdiction to be unenforceable, such enforceability shall not affect the binding nature of the balance of the Agreement and the remaining provisions shall be given effect, to the extent possible, as if the unenforceable provision had not been included herein.

(g)     Nothing in this Agreement shall be deemed or construed by the parties or by any third parties as creating the relationship of principal and agent, partnership or joint venture between the parties, it being understood and agreed that no provision contained herein, and no actions of the parties, shall be deemed to create any relationship between the parties other than the relationship of supplier and customer.

(h)     This Agreement shall be construed and enforced in accordance with the laws of the State of Nebraska and shall be subject to the Uniform Commercial Code of the State of Nebraska to the extent not inconsistent with the terms hereof.

*(Signature page follows)*

- 10 -

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first set forth above.

MEYER NATURAL FOODS LLC

By: _____

    Name: Alan Byers

    Title: President

GREATER OMAHA PACKING

By: _____

    Name: _____ Angelo Fili _____

    Title: _____ Vice President _____

- 11 -

**Gross**
**&Welch** P.C., L.L.O.
Attorneys at Law • Est. 1927

1500 Omaha Tower
2120 South 72ⁿᵈ Street
Omaha, NE 68124

**CERTIFIED MAIL®**

7015 1520 0003 3965 1000

Hasler
08/27/2015
US POSTAGE

PRIORITY MAIL
**$12.20⁰**



ZIP 68124
011D11642457

Liberty Mutual Fire Insurance Company
c/o CSC - Lawyers Incorporating Service Co.
233 South 13th Street, Ste. 1900
Lincoln, NE  68508